This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Defendant, Dwaine R. Gales, has appealed from his convictions in the Lorain County Court of Common Pleas for attempted kidnapping, robbery, and grand theft auto. We affirm.
Defendant was indicted on one count of attempted kidnapping, in violation of R.C. 2905.01(A)(2); one count of robbery, in violation of R.C. 2911.02(A)(2); one count of grand theft auto, in violation of R.C.2913.02(A)(1); and one count of assault, in violation of R.C. 2903.13(A).
The trial date was scheduled for October 26, 1999. Before trial, Defendant moved pro se for new counsel, which the court denied without comment. At trial Defendant requested a sixty-day extension in order to obtain new counsel, claiming that his attorney met with him for the first time the previous night in the county jail. The court denied the request for new counsel, but allowed Defendant to waive his speedy trial rights for sixty days in order to give Defendant and his attorney time to prepare for trial.
The trial was rescheduled for November 30, 1999, and subsequently reset for December 28, 1999 (sixty days after the original trial date). On December 3, 1999, Defendant moved to reduce his bond and for an investigative expert to locate and interview witnesses. The trial court denied both motions.
Following a jury trial on December 28, 1999, Defendant was found guilty of attempted kidnapping, robbery, and grand theft auto, and not guilty of assault. The Lorain County Court of Common Pleas sentenced him accordingly. Defendant timely appealed and has raised six assignments of error for review. We address each in turn, rearranging them for ease of review.
 I. Pretrial Motions
In Defendant's second assignment of error, he argues that the trial court erred in denying several pretrial motions, including a motion for investigative assistance, a motion to reduce bond, and a motion for new counsel. We will address each motion separately.
 A. Motion for Investigative Assistance
Defendant argues that the services of a court-appointed investigator were necessary to assist him in locating two key witnesses. He maintains that the testimony of these witnesses would have reduced the credibility of the victim and allowed the jury to believe his defense.
The Ohio Supreme Court has held that due process "requires that an indigent criminal defendant be provided funds to obtain expert assistance at state expense only where the trial court finds, in the exercise of a sound discretion, that the defendant has made a particularized showing (1) of a reasonable probability that the requested expert would aid in his defense, and (2) that denial of the requested expert assistance would result in an unfair trial." State v. Mason (1998), 82 Ohio St.3d 144, syllabus. It is insufficient to show a mere possibility of assistance.Id. at 150. Consequently, the trial court's denial of such expert assistance is reviewed under an abuse of discretion standard. Id. Abuse of discretion is not a mere error of judgment, rather it is "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v.Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621.
The only information Defendant was able to provide regarding the alleged witnesses was a first name or a description, an approximate or previous address, and the testimony he hoped they would give, if located. There was no evidence that these witnesses existed, other than the testimony of Defendant. We find that Defendant did not make a particularized showing that an investigator would have aided his defense, as required. See State v. Mason, 82 Ohio St.3d at 150. Defendant failed to demonstrate more than a mere possibility of assistance from the requested expert. Since there is no showing that the investigator would have aided Defendant's defense, the trial court's denial of the motion did not result in an unfair trial was not an abuse of discretion.
 B. Motion to Reduce Bond
Defendant next argues that the trial court's denial of his motion to reduce bond prevented him from assisting in his defense. The amount of bail in any given case is largely within the sound discretion of the trial court. Bland v. Holden (1970), 21 Ohio St.2d 238, 239. There are no facts alleged in this case which indicate in any way that the bail was excessive, or that the trial court abused its discretion in denying Defendant's motion to reduce bond.
 C. Motion for New Counsel
Defendant also argues that the trial court denied him the right to effective assistance of counsel when it denied his motion for new counsel. In Defendant's pro se motion, he alleged that his appointed trial counsel failed to establish communications with Defendant, failed to provide him with requested documentation in preparation of his defense, failed to file a motion to reduce bond, and "inadequately prepared to review Defendants [sic] case file during [the] pretrial hearing. ie [sic] . . no file available." The trial court denied this motion without comment on October 25, 1999, the day before the original trial date.
The decision to grant or deny a defendant's request for change of counsel rests within the discretion of the trial court. See State v.Coleman (1988), 37 Ohio St.3d 286, 292. "To discharge a court-appointed attorney, the defendant must show a breakdown in the attorney-client relationship of such magnitude as to jeopardize the defendant's right to effective assistance of counsel." Id. at paragraph four of the syllabus.
If the defendant alleges facts which, if true, would require relief, the trial court must inquire into the defendant's complaint and make the inquiry part of the record. See State v. King (1995), 104 Ohio App.3d 434,437. "The inquiry may be brief and minimal, but it must be made." Id.
In the instant case, Defendant has not shown he was prejudiced by the trial court's denial of the motion for new counsel. The trial court adequately inquired into and addressed Defendant's concerns regarding defense counsel, prior to the start of trial. As a result of this inquiry, the trial court postponed the trial for sixty days in order to allow Defendant and his attorney sufficient time to prepare. Prior to and during the rescheduled trial, the record indicates that defense counsel subpoenaed and interviewed witnesses, reviewed the case with Defendant, reviewed police reports, filed motions, and provided Defendant with a competent defense. Therefore, we find no abuse of discretion in the trial court's denial of Defendant's motion for new counsel.
Defendant's second assignment of error is overruled.
 II. Prosecutorial Misconduct
In his third assignment of error, Defendant contends that the State's remarks during trial and closing arguments constituted prosecutorial misconduct. He argues that these acts denied him a fair trial. Defendant's argument is not well taken.
"The test for prosecutorial misconduct is whether [the prosecutor's conduct was] improper and, if so, whether [the conduct] prejudicially affected substantial rights of the accused." State v. Lott (1990),51 Ohio St.3d 160, 165. The ultimate issue is whether the defendant was deprived of a fair trial. State v. Apanovitch (1987), 33 Ohio St.3d 19,24. The alleged misconduct must be evaluated in the context of the entire trial. State v. Keenan (1993), 66 Ohio St.3d 402, 410.
Defendant first argues that comments made by the State during cross-examination concerning Defendant's testimony constituted prosecutorial misconduct. The prosecutor started the cross-examination of Defendant with the statement, "That's some story, Mr. Gales." This was the only statement in question objected to by defense counsel. We find that the State's remark did not affect a substantial right of Defendant, nor did it deprive Defendant of a fair trial.
Next, Defendant contends that the State made improper comments during closing arguments that generally referred to Defendant using his previous four months in jail to make up his story. Prosecutors are given wide latitude in closing argument. State v. Davis (1996), 76 Ohio St.3d 107,119. The State may comment on the testimony of the defendant, and may suggest the conclusion that is to be drawn therefrom. State v. Thompson
(1993), 87 Ohio App.3d 570, 582. He may state that the evidence supports the conclusion that the defendant is lying, is not telling the truth, is scheming, or has ulterior motives for not telling the truth. State v.Draughn (1992), 76 Ohio App.3d 664, 670. In the instant case, the comments made about Defendant's testimony during closing argument were not improper and did not deny Defendant a fair trial.
Defendant also maintains that the State made improper comments during closing argument regarding the testimony of the victim's eight-year-old son, Ruben. Defendant argues that the statements improperly appealed to the jury's fears as parents and asked the jury to place themselves in the victim's position as a parent. Certainly it might have been better had the State not made the remarks. However, when read in context with the rest of his closing argument, we cannot conclude that his comments were of such a character as to prevent a fair trial.
Finally, Defendant contends that the State made improper and prejudicial comments regarding Defendant's exercise of his Fifth Amendment right to remain silent. Comments on Defendant's post-Miranda silence occurred in two contexts. The first occurred during the cross-examination of Defendant when the prosecutor asked several questions regarding Defendant's lack of explanation to police regarding the incident in question, as follows:
 Q. Later, after the police arrested you, you had a chance to talk to this detective about it, didn't you?
A. Yes
 Q. Okay. Did you at that time explain to him the nature of what happened, and the fact that you were just taking the car to bring it to the police station?
A. No, we never got that far into a conversation.
 Q. Do you think it would have been relevant to tell him that?
 A. At this particular time, no, I didn't think it would be relevant to tell him that, no.
The second instance occurred during the State's closing argument when the prosecutor reminded the jury that Defendant had not explained his actions to police. The prosecutor said, "The police, he's never said anything to them, not at the scene, not when he talked to the [d]etectives. This is the first time this story has ever come up." Because defense counsel did not object to these comments by the prosecution, we must analyze this assignment of error under a plain error standard pursuant to Crim. L.Ed.2d R. 52(B). To constitute plain error, it must appear from the record that an error occurred and that except for that error the outcome of the trial would have been different. State v.Cooperrider (1983), 4 Ohio St.3d 226, 227.
Questioning regarding post-Miranda silence is improper. Doyle v. Ohio
(1976), 426 U.S. 610, 619, 49 L.Ed.2d 91, 98 (finding that a defendant's silence after being arrested and read his Miranda rights may not be used to impeach the defendant's trial testimony); see, also, Miranda v.Arizona (1966), 384 U.S. 436, 16 L.Ed.2d 694. Where testimony is admitted regarding a defendant's post-arrest silence, such error should be "`quantitatively assessed in the context of other evidence presented in order to determine [the effect it had on the trial.]'" (Alterations in original.) Brecht v. Abrahamson (1993), 507 U.S. 619, 629,123 L.Ed.2d 353, 367, quoting Arizona v. Fulminante (1991), 499 U.S. 279, 308,113 L.Ed.2d 302, 330. Therefore, we agree that the State's questioning regarding Defendant's silence after arrest, and the comments thereon, were improper. However, we do not believe that Defendant was so materially prejudiced by the State's comments that plain error occurred. The state of the evidence was such that Defendant was not deprived of a fair trial. The third assignment of error is overruled.
 III. Jury Instructions
Defendant next argues in his fifth assignment of error that the trial court erred in denying his motion for a jury instruction on the lesser-included offense of unauthorized use of a motor vehicle as defined in R.C. 2913.03. We disagree.
Unauthorized use of a motor vehicle is a lesser-included offense of grand theft auto, of which Defendant was convicted. State v. Taylor (July 30, 1975), Summit App. No. 7669, unreported, at 4. A charge on a lesser-included offense is required only where the evidence at trial would reasonably support an acquittal on the greater crime charged and a conviction on the lesser-included offense. State v. Thomas (1988),40 Ohio St.3d 213, paragraph two of the syllabus. This rule, as applied to this case, would require that an instruction on unauthorized use of a motor vehicle be given only if the jury could have reasonably concluded that Defendant did not have the purpose to deprive the victim of her van.
When Defendant was arrested in the victim's van, he was driving in the opposite direction of the police station, although he later claimed that is where he was taking the vehicle. The arresting officer testified that when he started to follow the vehicle, with the lights and siren turned on, Defendant sped up in an attempt to elude him, but then pulled over. Defendant told the officer, "I wanted a ride, she wouldn't give me a ride, so I took the car."
We hold that the trial court did not err in refusing to instruct the jury on the lesser-included offense of unauthorized use of a motor vehicle. Under no reasonable view of the evidence could the jury have found that Defendant did not have the purpose to deprive the victim of her property when he took her vehicle. Defendant's fifth assignment of error is overruled.
 IV. Sufficiency and Manifest Weight of the Evidence
Defendant argues in his fourth assignment of error that his convictions were against the manifest weight of the evidence and not supported by sufficient evidence. We disagree.
 A. Sufficiency
We first address Defendant's sufficiency argument. Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. State v. Wolfe
(1988), 51 Ohio App.3d 215, 216. In making this determination, all evidence must be construed in a light most favorable to the State. Id.
Defendant was convicted of attempted kidnapping in violation of R.C.2905.01(A)(2), which provides that no person, by force, threat, or deception shall restrain another of his liberty for the purpose of facilitating the commission of any felony or flight thereafter. Attempted kidnapping, like any attempt crime, requires an offender to act knowingly or purposely to "engage in conduct that, if successful, would constitute or result in the offense." R.C. 2923.02(A). Attempted kidnapping requires a purposeful removal or restraint. See State v. Maurer (1984),15 Ohio St.3d 239, 270. R.C. 2901.22(A) defines the culpable mental state of "purposely" as follows:
 A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature.
In this assignment of error Defendant maintains that the State failed to produce sufficient evidence of the required purpose for attempted kidnapping. The victim testified that Defendant suddenly approached her, grabbed the door of her van, and threatened her life several times if she failed to do as he requested. When the victim tried to escape from the vehicle, Defendant pushed her back in and tried to keep her there by sitting on her, while he attempted to start the van. Melanie Lawrence, a bystander at the scene, testified that the victim told her immediately after the incident that Defendant had tried to kidnap her by pushing her into the van. Therefore, viewing the evidence in a light most favorable to the State, we find there was sufficient evidence that Defendant purposely used threats and force to restrain the liberty of the victim in order to facilitate the commission of grand theft auto. As such, the State provided sufficient evidence of Defendant's purpose as required by R.C. 2905.01(A)(2), 2923.02(A), and 2901.22(A).
 B. Manifest Weight
We next address Defendant's manifest weight argument. When a defendant asserts that his conviction is against the manifest weight of the evidence,
 an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
State v. Otten (1986), 33 Ohio App.3d 339, 340. This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 1. Grand Theft Auto
Defendant was convicted of grand theft auto in violation of R.C.2913.02(A)(1), which states that "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [w]ithout the consent of the owner or person authorized to give consent[.]" During Defendant's testimony, he unequivocally stated that he took the victim's vehicle without her consent. Then he altered his testimony and said that he did not take it without her consent, but rather "took her car with the indication that she would give me a ride." In either case, the record verifies that he took the victim's vehicle while she ran away from the vehicle screaming, indicating to the jury that he took it without her consent.
The evidence presented to the jury by Defendant was his own testimony along with that of two others: a friend, Troy Cooper, and a neighbor, Dave Thomas. Defendant testified that he knew the victim prior to the incident in question. He said that the victim and her friend, Denise, often visited his apartment. He testified that he bought them drugs using their money and frequently drove the victim's van for this purpose. According to Defendant, the victim and Denise frequently stayed at his apartment and he suspected they were the culprits in an earlier theft of his apartment, for which he had previously filed a police report.[1]
He also testified that subsequent to the theft, he found out that his neighbor, Frank, had seen the victim in her van outside his apartment on the night that his possessions were stolen.
Defendant testified that on the day in question he and the victim had a conversation in the parking lot, after which the victim indicated she would give him a ride, but then she walked toward the store while yelling. Defendant said the reason he drove away in the van was to take it to the police station as evidence of the theft. He stated that he was going in the opposite direction of the police station at the time he was pulled over because he wasn't sure where it was located.
Troy Cooper, Defendant's sponsor for Alcoholics Anonymous, testified that he had previously seen Defendant driving a maroon Van on numerous occasions. However, after looking at the victim's maroon van on the day of trial, Mr. Cooper was not sure if it was the same van.
Dave Thomas, Defendant's neighbor, testified that he previously saw Defendant driving a van manufactured by Chrysler of a "dark reddish color." However, after viewing the victim's van on the day of trial, Mr. Thomas stated that it was not the same van he had previously seen Defendant driving.
Having reviewed the record, we conclude that Defendant's conviction for grand theft auto was not against the manifest weight of the evidence. The jury was clearly entitled to give no weight to Defendant's testimony that he was taking the van to the police as evidence. The jury had ample evidence that Defendant had the purpose to deprive the victim of her vehicle, as discussed above in Defendant's fifth assignment of error, and that he took control of the vehicle without her consent.
 2. Robbery
Defendant was also convicted of robbery in violation of R.C.2911.02(A)(2), which states that "[n]o person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall * * * [i]nflict, attempt to inflict, or threaten to inflict physical harm on another[.]" As mentioned previously, the evidence presented showed that Defendant made several threats to kill the victim throughout the course of taking the victim's vehicle. This was confirmed by the victim's testimony and that of her son, who was also present in the vehicle during part of the incident.
Defendant testified that the conversation he had with the victim occurred entirely outside the van. He said it lasted approximately ten minutes and that he never threatened or touched the victim. Defendant also admitted to previous convictions for aggravated robbery and possession of criminal tools.
We conclude that Defendant's conviction for robbery is not against the manifest weight of the evidence. Although the versions of the events conflict, this fact alone is insufficient to support a ruling that Defendant's robbery conviction was against the manifest weight of the evidence. There was ample evidence that Defendant threatened to inflict physical harm on the victim while committing the theft of her van. The testimony does not weigh heavily in favor of Defendant and the jury did not lose its way when it found Defendant guilty of robbery.
 3. Attempted Kidnapping
Defendant was convicted of attempted kidnapping in violation of R.C.2905.01(A)(2), which states that "[n]o person, by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person * * * [t]o facilitate the commission of any felony or flight thereafter[.]" To constitute an attempt, the offender must act knowingly or purposely to "engage in conduct that, if successful, would constitute or result in the offense." R.C. 2923.02(A).
Although Defendant testified he used no threats or force in the incident in question, the record discloses otherwise. We previously found he purposely restrained the victim for the purpose of stealing her van. The testimony of the victim, her son, and Melanie Lawrence indicates he used threats and force in the process. Therefore, there was ample evidence to conclude Defendant was guilty of attempted kidnapping. Thus, Defendant's conviction was not against the manifest weight of the evidence.
The fourth assignment of error is overruled.
 V. Ineffective Assistance of Counsel
Defendant argues, in his first assignment of error, that he was deprived of a fair trial by virtue of ineffective assistance of counsel. He contends that his trial attorney was deficient in six respects and that had counsel been effective, the jury would have believed his defense and disbelieved the victim. Defendant's argument is not well taken.
The United States Supreme Court has set forth a two-part test to determine if a conviction or sentence should be reversed based upon ineffective assistance of counsel. Strickland v. Washington (1984),466 U.S. 668, 687, 80 L.Ed.2d 674, 693. "First, the defendant must show that counsel's performance was deficient." Id. To meet this standard Defendant must be able to prove "errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Id. Second, Defendant must establish that the deficient performance by counsel was serious enough that it resulted in prejudice to the defendant "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id.
"[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]"Strickland v. Washington, 466 U.S. at 689, 80 L.Ed.2d at 694. There are numerous ways for counsel to provide effective assistance in any given case. In light of these facts, debatable trial tactics and strategies do not constitute a denial of effective assistance of counsel. State v.Clayton (1980), 62 Ohio St.2d 45, 49.
Defendant's first alleged instance of ineffective assistance of counsel was defense counsel's failure to meet with Defendant and keep him informed, including his failure to meet with Defendant for preparation purposes until the night before the original trial date. Second, Defendant maintains defense counsel's failure to properly investigate and prepare for trial resulted in ineffective assistance of counsel. In both cases, the alleged acts occurred prior to the rescheduled trial. As noted above in Defendant's second assignment of error, the trial court inquired into Defendant's allegations of ineffective assistance of counsel on the originally scheduled trial date. As a result of this inquiry, Defendant was granted an extra sixty days to prepare, during which time counsel adequately communicated with Defendant and prepared for trial. Therefore, Defendant has not shown ineffective assistance of counsel on these issues.
In his third assertion, Defendant argues that trial counsel was ineffective by his failure to subpoena two witnesses: a car wash employee, and the victim's alleged friend, Denise. Defendant claims the witnesses would have testified that they had previously seen Defendant and the victim together and that they had seen Defendant in possession of the victim's van prior to the incident in question, contrary to the victim's testimony at trial. In his fifth alleged error, Defendant claims that counsel's failure to introduce police testimony and a police report regarding the theft of his apartment to support his defense also amounted to ineffective assistance of counsel.
"`A counsel's mere failure to subpoena witnesses is not a substantial violation of an essential duty to a client in the absence of a showing that testimony of any one or more of the witnesses would have assisted the defense.'" State v. McKee (Oct. 1, 1997), Lorain App. No. 96CA006599, unreported, at 5-6, quoting Middletown v. Allen (1989),63 Ohio App.3d 443, 448. Defendant has failed to demonstrate that the potential testimony in question would have significantly assisted his defense. Further, he has not established that there is a reasonable probability that the outcome of the trial would have been different if counsel would have subpoenaed and called the witnesses on his behalf. Additionally, defense counsel may have decided not to subpoena these witnesses because their testimony would not have been favorable.[2]
Thus, Defendant has failed to show any prejudice arising from his counsel's failure to subpoena these witnesses.
With respect to the police report previously filed by Defendant, assuming such a record exists, we conclude that it was a tactical decision not to attempt to introduce it as evidence. Because Defendant never reported to police that he suspected the victim in the theft of his apartment, the police report regarding the incident is of no relevance to the instant case. Therefore, the decision not to introduce the report as evidence did not prejudice Defendant.
The fourth area of the trial Defendant challenges deals with his attorney's decision to call Dave Thomas as a defense witness, despite knowledge of damaging testimony. Defendant subpoenaed Mr. Thomas as a defense witness and prior to his testimony, Mr. Thomas was asked to view the victim's van. Mr. Thomas testified that the victim's van was not the van he had seen Defendant driving on previous occasions.
The decision to call a witness is a matter of trial strategy and such a decision is accorded deference. State v. Hunt (1984), 20 Ohio App.3d 310,312. Here, this tactical decision becomes more understandable in light of the fact that if Defendant had not called Mr. Thomas as a witness, the State, most likely, would have called him in rebuttal to Defendant's testimony that he had often driven the victim's van. Apparently, Defendant's attorney was trying to lessen the blow of this evidence by calling the witness himself. The strategy did not amount to ineffective assistance of counsel.
Defendant's final assertion is that counsel's performance was deficient because he failed to object to the alleged prosecutorial misconduct. However, because we have already held that the prosecutor's comments were not prejudicial and did not deprive Defendant of a fair trial, we cannot say that counsel was ineffective in failing to object. In sum, Defendant's trial attorney did not render ineffective assistance of counsel. Accordingly, the first assignment of error is overruled.
 VI. Cumulative Effect of Errors
In his sixth and final assignment of error, Defendant contends that the cumulative effect of the errors committed by the trial court and his trial counsel denied Defendant his right to a fair trial. Inasmuch as we have held that the trial court committed no errors and that Defendant's trial attorney did not render ineffective assistance of counsel, there was no cumulative effect of errors as alleged by Defendant. Therefore, Defendant's sixth assignment of error is without merit.
Defendant's six assignments of error are overruled, and the judgment of the trial court is affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
 ___________________________ LYNN C. SLABY
BAIRD, P. J., CONCURS, CARR, J., CONCURS IN JUDGMENT ONLY
[1] On cross-examination Defendant testified that he never told police that he suspected the victim and Denise had robbed his apartment.
[2] We also note that Defendant was unable to provide his attorney with the address of Denise.