The STATE of Ohio, Appellee,

v.

THOMPSON, Appellant.

[Cite as *State v. Thompson* (1993), 87 Ohio App.3d 570.]

Court of Appeals of Ohio,
Medina County.

No. 2135.

Decided May 5, 1993.

*Dean Holman,* Medina County Prosecuting Attorney, for appellee.

*James R. Leaver* and *Paul Mancino, Jr.,* for appellant.

DICKINSON, Judge.

The defendant in this matter was convicted, after a jury trial, of two counts of trafficking in drugs in violation of R.C. 2925.03(A)(1) and (5). He appealed to this court, originally assigning three errors: (1) that the trial court incorrectly denied him access through discovery to certain police reports; (2) that the trial court improperly allowed the state to introduce a tape recording of a telephone conversation in which defendant had participated; and (3) that the jury's verdict was against the manifest weight of the evidence. Defendant subsequently retained new counsel and moved for leave to file additional assignments of error. That motion was granted and he filed six "supplemental" assignments of error. We find all nine of defendant's assignments of error to be without merit and the decision of the trial court is affirmed.

## I. FACTUAL BACKGROUND

Defendant's conviction stemmed from two drug transactions that occurred on consecutive days during May 1991. Both transactions involved sales of drugs to an undercover police officer and, on both occasions, a confidential police informant participated in the sales.

The first transaction was a sale of Percocet tablets. At trial, defendant claimed that he did not know that the sale was going to occur until immediately before it took place and that he resisted involvement in the transaction. He testified that the confidential informant had picked him up at his home and offered to buy him lunch. He claimed that the informant drove him to a parking lot at a K–Mart where the transaction occurred. According to the defendant, the informant took a bag containing the Percocet from the car's glove box and sold them to the undercover police officer who had been waiting for them at that location. Defendant testified that, although the informant wanted defendant to hand the tablets to the officer, he refused to do so and did not participate in the transaction in any way.

On the following day, the informant again picked defendant up at his home and they then picked up another individual. The three of them next met with the undercover officer and arrangements were made for the informant, the defendant and the third individual to travel to East Cleveland, obtain crack cocaine and deliver it to the officer. Those arrangements were carried out. Defendant admitted that he knew what was occurring during the course of the second

transaction, but again denied that he participated in any way other than being present.

The undercover officer testified at trial and provided a different view of defendant's role in the transactions. The officer testified that, during the first transaction, he (the officer) stood by the window on the driver's side of the automobile adjacent to where the informant was seated. Defendant, who was in the front passenger seat, picked the Percocet up from the center console of the automobile and handed it to the informant, who than passed it to the officer. He also testified that, when asked how many tablets were in the bag containing the Percocet, defendant responded that there were sixty-seven. He stated that he asked if the price was still $3 apiece and that defendant became upset and said:

" 'I thought we agreed on $200 for the bag.'

"I said, okay, that would be fine, if there was sixty-seven in there."

Finally, the officer said that he handed the money to the informant who placed it on the center console of the automobile.

The officer's testimony regarding the second transaction was that defendant participated in price negotiations for the crack cocaine. Specifically, he said that defendant agreed to a reduction in price of $30 for the cocaine because the officer told him that the bag of Percocet from the previous day had contained only fifty-seven tablets instead of sixty-seven tablets. He also testified that, when he asked who wanted to count the money, defendant said that he would, took it from the officer and counted it. He testified that the third individual present during the second transaction actually delivered the crack cocaine to him. The jury found defendant guilty on both counts.

## II. DISCUSSION

### A. DEFENDANT'S FIRST ASSIGNMENT OF ERROR

Defendant's first assignment of error was that the trial court incorrectly denied him access to certain police reports through discovery. Specifically, prior to trial, defendant filed a "discovery motion" by which he sought all Brunswick city police reports and all police reports of the Medina–Wayne Drug Enforcement Agency pertaining to himself and the confidential informant who was involved in the transactions that led to his prosecution. According to his "motion," defendant was "requesting" the prosecuting attorney to produce the reports "pursuant to Ohio Criminal Rule 16 and Ohio Revised Code Section 149.43." The prosecutor did not produce the requested documents and defendant moved for an order compelling discovery. The trial court denied defendant's motion, stating that police reports are not discoverable.

Defendant has argued that he was entitled to discovery of the requested police reports pursuant to R.C. 149.43, Ohio's public records statute. He has not argued that those reports were discoverable pursuant to Crim.R. 16.

There have been a number of Ohio Supreme Court decisions that have explored different aspects of the use of R.C. 149.43 by a party to a criminal action. For example, in *State ex rel. Scanlon v. Deters* (1989), 45 Ohio St.3d 376, 544 N.E.2d 680, the court found that a criminal defendant who had attempted to obtain documents through a request pursuant to R.C. 149.43 could not maintain a mandamus action to challenge the refusal to provide those documents. Rather, inasmuch as the documents he sought were discoverable pursuant to Crim.R. 16, he had an adequate alternative remedy:

"Where Crim.R. 16 provides a relator an adequate alternative remedy to R.C. 149.43, he cannot be granted a writ of mandamus ordering the production of public records available under such rule." *Id.* at paragraph two of the syllabus.

In *State ex rel. Shane v. New Philadelphia Police Dept.* (1990), 56 Ohio St.3d 36, 564 N.E.2d 89, the Supreme Court again considered an appeal from a denial of a writ of mandamus following a refusal to provide documents to a criminal defendant pursuant to a R.C. 149.43 request. The requested documents in *Shane*, however, unlike those that were requested in *Scanlon*, were not clearly available to the defendant through the use of Crim.R. 16. Regardless of that distinction, the Supreme Court concluded that the writ of mandamus had properly been refused because of the availability of an adequate alternative remedy:

"[W]e conclude Shane had an adequate legal remedy, criminal discovery, to test any right he had to obtain these documents as public records. Trial courts can decide R.C. 149.43 issues in the discovery process. * * * If the trial court wrongfully decided the R.C. 149.43 issues, Shane could obtain redress by way of appeal from his criminal conviction." *Shane, supra,* 56 Ohio St.3d at 37, 564 N.E.2d at 90.

It was appropriate, therefore, for the defendant in this case to seek relief in the trial court from the prosecutor's alleged refusal to comply with R.C. 149.43.

In *State ex rel. Clark v. Toledo* (1990), 54 Ohio St.3d 55, 560 N.E.2d 1313, the Supreme Court found that a criminal defendant who had exhausted the direct appeals of his conviction was entitled to documents available pursuant to R.C. 149.43 in order to search for evidence to support a petition for postconviction relief. The court reached that conclusion even though those same documents would not have been available to the defendant pursuant to Crim.R. 16. In doing so, the court specifically noted that it was not addressing "the possible application of R.C. 149.43 to original trial proceedings." *Id.* at 57, 560 N.E.2d at 1315. See

*State ex rel. Vindicator Printing Co. v. Watkins* (1993), 66 Ohio St.3d 129, 134, 609 N.E.2d 551, 556. Through his first assignment of error, the defendant in this case has attempted to test that application. We find, however, that it is not necessary for us to reach the question left open by the Supreme Court in *Clark.*

■ As noted previously, defendant in this case attempted to obtain the documents he desired by "requesting" that they be produced by the prosecuting attorney and then moving for an order compelling discovery. Documents of a governmental unit are properly sought pursuant to R.C. 149.43, however, through a request to the person responsible for keeping those documents. See *State ex rel. Nelson v. Fuerst* (1993), 66 Ohio St.3d 47, 47–48, 607 N.E.2d 836, 836–837. The prosecuting attorney was not the custodian of the documents sought by defendant in this case.

In *State v. Forehope* (1991), 71 Ohio App.3d 435, 594 N.E.2d 83, the Court of Appeals for the Fifth District considered facts similar to those in this case. In that case, the defendant had attempted to obtain the documents he desired through a request to the prosecutor and through a subpoena *duces tecum.* The court concluded that the defendant had not made a proper request pursuant to R.C. 149.43:

"In the case *sub judice,* appellant did not make a proper public records request. A motion asking the court to compel the prosecutor to produce the police file is not a request to the appropriate governmental unit. Similarly, a subpoena duces tecum ordering the police department to bring the file to the court hearing is not a request for the records to be made available for inspection at a reasonable time during regular business hours pursuant to R.C. 149.43." *Id.* at 440, 594 N.E.2d at 86.

As was true of the defendant in *Forehope,* the defendant in this case did not make a proper request for documents pursuant to R.C. 149.43. The defendant filed discovery motions, but did not request the subject documents from the proper agency. An initial request must be made to the agency from which the records are sought before a trial court can exercise its "mandamus-like" jurisdiction to review the denial of rights granted by R.C. 149.43. The trial court did not err in this case by denying defendant's motion for an order compelling discovery. Accordingly, defendant's first assignment of error is overruled.

## B. DEFENDANT'S SECOND ASSIGNMENT OF ERROR

Defendant's second assignment of error was that the trial court should not have allowed the state to introduce a tape recording of a telephone conversation in which he had participated. Defendant testified in his own defense. On cross-examination, he stated that he did not sell drugs, did not arrange deals for the

sale of drugs, and, specifically, did not arrange a transaction that involved his going to West Virginia and obtaining a pound of marijuana from his cousin for sale to the informant who was involved in the transaction for which defendant was being prosecuted. The trial court received in evidence, and allowed to be played for the jury, a tape recording of a telephone conversation between defendant and the informant in which defendant did agree to go to West Virginia and to return with a pound of marijuana for sale to the informant. Defendant has argued that the court should not have received that tape recording or permitted it to be played for the jury.

Defendant's first argument in support of this assignment of error is that the statements revealed by the tape recording were not inconsistent with his testimony and, therefore, the recording was not admissible pursuant to Evid.R. 613. He has further argued that the prosecutor did not establish a foundation, as required by Evid.R. 613(B), by presenting evidence "indicating the time, place, and person involved in the supposed contradictory statements." Finally, he has argued that any relevance of the tape-recorded statements was outweighed by their prejudicial effect. Both of defendant's first two arguments fail because of his status as a party to this case.

Evid.R. 613(B), which imposes the foundation requirements relied upon by defendant, specifically provides that it is not applicable to "admissions of a party-opponent as defined in Rule 801(D)(2)." Evid.R. 801(D)(2) defines an admission as a statement of a party offered against that party. The exception for admissions of a party noted in Evid.R. 613(B) was a part of the law of evidence even before adoption of the Ohio Rules of Evidence:

"The statements of a party are admitted upon a different principle from that which governs [prior inconsistent statements]. Such statements are admissions and provable by independent testimony; no foundation is necessary for their introduction as evidence, except some proof that they were made by the party." 4 Jones, Law of Evidence Civil and Criminal (5 Ed.1958), Section 934.

If defendant's statements were admissions, therefore, it was not necessary either that they be inconsistent with his trial testimony or that the prosecution establish the time place or other person involved for them to be admissible.

As noted in 1 Weissenberger, Ohio Evidence (1993), Section 801.33, use of the term "admission" in relation to statements of parties may be misleading:

"While the term 'admission' appears to imply that the out-of-court statement must be a confession or statement against interest, in actuality, any prior statement of a party is admissible providing it is offered against the party at trial."

Defendant's statements on the tape recording were offered against him at trial and, therefore, it was not necessary that they be inconsistent with his testimony at trial nor were the foundation requirements of Evid.R. 613(B) applicable to them.[1]

Defendant acknowledged that the voice on the tape recording was his. Accordingly, the trial court did not err in receiving the recording of his statements in evidence unless their "probative value [was] substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403(A).

■ A trial court enjoys broad discretion in admitting evidence and will be reversed only for an abuse of that discretion. See, *e.g., State v. Long* (1978), 53 Ohio St.2d 91, 98, 7 O.O.3d 178, 181, 372 N.E.2d 804, 808. Having reviewed the record, we find that the probative value of defendant's statements was not so slight and the danger of unfair prejudice to defendant so great that the trial court abused its discretion by receiving the tape recording in evidence. Defendant's second assignment of error is overruled.

## C. DEFENDANT'S THIRD ASSIGNMENT OF ERROR

■ Defendant's third assignment of error was that the verdict was against the manifest weight of the evidence regarding the first transaction (the sale of the Percocet tablets). The test we apply to determine whether a criminal conviction is against the manifest weight of the evidence was set out by this court in *State v. Otten* (1986), 33 Ohio App.3d 339, 340, 515 N.E.2d 1009, 1010:

"[A]n appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. * * * The discretionary power to grant a new trial should be exercised only in exceptional cases where the evidence weighs heavily against the conviction."

---

1. In one of the cases cited by defendant, *State v. Osborne* (1977), 50 Ohio St.2d 211, 217–218, 4 O.O.3d 406, 409–410, 364 N.E.2d 216, 220–221, the Supreme Court did analyze questioning of a criminal defendant about a prior out-of-court statement to determine whether the type of foundation now required by Evid.R. 613(B) had been established. The court found that it had been and concluded that the statement, therefore, had been properly received. Although that case was decided prior to the adoption of the Ohio Rules of Evidence, that analysis appears to have been inconsistent with the law of evidence even as it existed at that time. Clearly, however, to the extent that it stated the law at the time it was decided, it was overruled by the adoption of Evid.R. 613(B).

After reviewing the evidence introduced in this case, we find that the conviction was not against the manifest weight of the evidence.

Defendant was charged with violating R.C. 2925.03(A)(5) in connection with the first transaction:

"No person shall knowingly do any of the following:

" * * *

"(5) Sell or offer to sell a controlled substance in an amount equal to or exceeding the bulk amount, but in an amount less than three times that amount."

Defendant claims that, based on a tape recording of the transaction made by the undercover officer and received in evidence, he did not "sell or offer to sell" the Percocet tablets to the officer. While the tape recording does not clearly reveal defendant's involvement in the sale, it was only one piece of the evidence presented at trial regarding that transaction. In addition, the undercover officer testified that defendant told him how many tablets were in the bag, that defendant quoted the price for the tablets, and that defendant handed the bag to the informant to give to the officer. The officer explained the fact that defendant's voice was not audible on the tape by testifying that the microphone which he was wearing only picked up the closest sounds and that defendant was sitting in the passenger seat while the officer stood at the driver's window to conduct the transaction.

After reviewing the evidence, we cannot find that the jury clearly lost its way in finding defendant guilty based upon the sale of Percocet. Defendant's third assignment of error is overruled.

## D.  DEFENDANT'S SUPPLEMENTAL ASSIGNMENTS OF ERROR

As noted previously, defendant filed six supplemental assignments of error. His second, fourth, fifth, and sixth supplemental assignments of error concern matters that he failed to call to the trial court's attention at a time when the alleged errors could have been avoided or corrected. Accordingly, we need not consider those assigned errors. As discussed below, however, even if defendant had properly preserved those alleged errors for review, we would overrule them.

■ Defendant's first supplemental assignment of error was that the trial court had incorrectly prevented him from relating statements he claimed were made to him by the informant who participated in the drug transactions for which he was prosecuted. The trial court prohibited that testimony based upon the hearsay rule. Defendant claims, however, that the testimony at issue was not hearsay based upon Evid.R. 801(D)(2). Pursuant to Evid.R. 801(D)(2), admissions of a party-opponent are not hearsay. Defendant claims that the informant

was an employee of the police and, therefore, his statements were admissions by a party-opponent.

Defendant has argued that his position is supported by R.C. 3719.14, which provides that law enforcement officials, or individuals assisting law enforcement officials, may possess controlled substances without being subject to criminal prosecution. It does not transform a confidential informant into an employee of the police department, however, and is irrelevant to application of Evid.R. 801(D)(2). The trial court properly excluded defendant's attempted testimony regarding statements allegedly made to him by the informant. Defendant's first supplemental assignment of error is overruled.

■ Defendant's second supplemental assignment of error was that he was denied a fair trial by a police officer's testimony that defendant was identified through a police record. We do not agree that this denied him a fair trial.

The testimony at issue was as follows:

"Q. What name of the suspect/defendant, whatever you want to call it, appears on State's Exhibit 2, your envelope, when you first bought the pills?

"A. Keith A. Thompson.

"Q. And what name appears on the submission sheet?

"A. Keith A. Thompson.

"Q. By what name did you know the defendant at that time?

"A. Dana. The way the informant introduced him was Dana, but later in conversation he said his real name was Keith Thompson, and we identified him as Keith Thompson through a local police record, initially, that is how we identified him.

"Later, we were able to determine his real name by tracing his residence."

The officer's offhand remark that a police record was used to identify defendant's correct name was not so prejudicial as to affect his right to a fair trial. Accordingly, defendant's second supplemental assignment of error is overruled.

■ Defendant's third supplemental assignment of error was:

"The defendant was denied due process of law when the court permitted the prosecutor to cross-examine the defendant concerning an unrelated drug matter."

As discussed previously, by his second original assignment of error, defendant contended that a tape recording regarding a drug transaction for which he was not indicted should not have been received in evidence. By this assignment of error, he appears to be arguing that the prosecutor should not have been permitted to ask him questions about that transaction. In responding to those

questions, defendant denied the substance of the statements on the recording. Defendant's position appears to be that those questions were prohibited by Evid.R. 608(B). Evid.R. 608(B), however, prohibits proof of a witness's conduct by extrinsic evidence; it does not prohibit cross-examination about such conduct for purposes of impeachment. In fact, it specifically provides that instances of conduct of a witness "may * * * in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness * * *." Evid.R. 608(B), therefore, did not prohibit the prosecutor from asking the questions about which defendant has complained.

Defendant has also argued that the prosecution's questions were improper based upon the principle discussed in *United States v. Davenport* (C.A.9, 1985), 753 F.2d 1460. *Davenport* dealt with the requirement of a good-faith basis for a question asked on cross-examination. The court in that case noted the potential damage that may result to a witness asked a question about alleged misconduct even though the witness, in response to that question, denies having engaged in the misconduct. To guard against the insinuation of misconduct, the court noted that a questioner must have a good faith basis for asking any such question. *Id.* at 1463. In this case, there can be no doubt concerning the prosecutor's good faith basis for his questions about the pound of West Virginia marijuana. The tape recording of defendant's participation in that transaction demonstrated that basis. Defendant's third supplemental assignment of error is overruled.

Defendant's fourth supplemental assignment of error was that he was denied due process of law because the trial court did not instruct the jury on the defense of entrapment. "The defense of entrapment is established where the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order to prosecute." *State v. Doran* (1983), 5 Ohio St.3d 187, 5 OBR 404, 449 N.E.2d 1295, paragraph one of the syllabus. An instruction on entrapment would not have been appropriate in this case.

Defendant testified at trial that he was not actively involved in either of the transactions for which he was being prosecuted. In both instances, he claimed that he was there, but did not participate. This testimony is not consistent with requesting an instruction on the entrapment defense. The entrapment defense presupposes active participation in the illegal activity at the prompting of the government. *Doran, supra.* Defendant's fourth supplemental assignment of error is overruled.

Defendant's fifth supplemental assignment of error was that certain remarks of the prosecutor during closing argument denied him a fair trial. The Court of Appeals for the Fifth District recently considered the kinds of closing

arguments that are permissible for prosecutors in criminal cases. *State v. Draughn* (1992), 76 Ohio App.3d 664, 602 N.E.2d 790. In *Draughn*, the court held that the prosecutor is limited to comments upon the evidence and any logical and appropriate conclusions to be drawn therefrom. The prosecutor may comment on the testimony of defense witnesses, including the defendant, and may suggest conclusions to be drawn from that testimony. *Id.* at 670, 602 N.E.2d at 793, citing *State v. Strobel* (1988), 51 Ohio App.3d 31, 554 N.E.2d 916. The prosecutor may not invite the jury to decide the case upon standards or grounds other than the evidence and the law applicable to the case. *Draughn, supra,* 76 Ohio App.3d at 671, 602 N.E.2d at 793. The prosecutor's remarks should be judged in the context of the entire case and, more particularly, the entire argument. *Id.*

The statements of the prosecutor that defendant claims were objectionable and prejudicial, judged in the context of the entire case and the entire argument, did not deny defendant a fair trial. Those statements focused on defendant's testimony, pointing out the weaknesses and inconsistencies in his defense. The prosecutor did not act improperly in his closing argument. Accordingly, defendant's fifth supplemental assignment of error is overruled.

Defendant's sixth supplemental assignment of error was that the trial court denied him a fair trial by admitting drugs into evidence for which, he claimed, the state had failed to establish a proper chain of custody. The burden of establishing a chain of custody is on the state. *State v. Moore* (1973), 47 Ohio App.2d 181, 1 O.O.3d 267, 353 N.E.2d 866; *State v. Clark* (Sept. 23, 1992), Lorain App. No. 91CA005261, unreported, at 5, 1992 WL 236761. In doing so, however, "[t]he practicalities of proof do not require the state to negate all possibilities of substitution or tampering." *Moore, supra,* 47 Ohio App.2d at 183, 1 O.O.3d at 268, 353 N.E.2d at 870. Rather, it is only necessary that the state "establish that it is reasonably certain that substitutions, alteration or tampering did not occur." *Id.*

In this case, defendant has argued that the chain of custody was broken when the undercover agent took the drugs from the second transaction to his home instead of directly to the police station. The officer testified that, at his home, he placed the drugs in his personal vault for safekeeping. The following day, he removed them, transported them to the police station, and placed them in the police vault. Through the officer's testimony, the state established that it was reasonably certain that substitutions, alteration, or tampering did not occur. Therefore, the chain of custody was sufficiently established. The sixth supplemental assignment of error is overruled.

### III. CONCLUSION

Based upon the foregoing, defendant's original three assignments of error and his six supplemental assignments of error are overruled. Accordingly, the judgment of the trial court is affirmed.

*Judgment affirmed.*

COOK, P.J., and BAIRD, J., concur.