DECISION.
{¶ 1} Defendant-appellant Steven Kelly appeals from the judgment convicting him of robbery in violation of R.C. 2911.02(A)(2) and receiving stolen property in violation of R.C. 2913.51(A). A charge of aggravated robbery was dismissed after the jury could not agree upon a verdict. Kelly now raises five assignments of error, none of which we find to be well taken.
{¶ 2} The following facts are undisputed. On March 22, 2001, as Virginia Whitaker pulled her 1999 Cadillac into her garage, a man stopped her in her driveway. Whitaker did not know the man and asked him if she could help him. The man demanded that Whitaker give him the car keys. Whitaker refused and the man took the car keys out of her pocket and drove away in the car. Whitaker called the police. When Officer Matt Havercamp arrived, Whitaker described her assailant as a man about 5 feet 7 inches or 5 feet 8 inches in height, between 20 to 30 years old, and wearing a white T-shirt and blue denim pants. She also described him as having a "very strange hairdo" that "was all sectioned off in little squares and had some little twigs in each square."
{¶ 3} While driving Whitaker's car later that evening, Kelly was stopped by Officer Adam Pape and arrested. Kelly was found carrying a knife. Three girls and Kelly's seventeen-year-old brother, Drew Sloan, were also passengers in the stolen car.
{¶ 4} In the first assignment of error, Kelly asserts that the trial court's findings relating to robbery and receiving stolen property were against the manifest weight of the evidence. When reviewing a manifest-weight claim, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and decide whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice.[1] The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact.[2]
{¶ 5} Having reviewed the trial transcript and weighed all the evidence produced at trial, we hold that the robbery and receiving-stolen-property convictions were not against the manifest weight of the evidence. To prove the elements of receiving stolen property under R.C. 2913.51(A), the state had to demonstrate that Kelly received, retained, or disposed of Whitaker's car, knowing or having reasonable cause to believe that the car had been obtained through the commission of a theft offense. To prove the elements of robbery under R.C. 2911.02(A)(2), the state had to demonstrate that, in attempting or committing the theft of Whitaker's car, Kelly inflicted, attempted to inflict, or threatened to inflict physical harm on Whitaker. The state presented evidence that Kelly had obtained Whitaker's car through theft and that Kelly had threatened to inflict physical harm on Whitaker when committing the theft.
{¶ 6} Whitaker testified that Kelly, whom she identified in a photographic lineup and in court, had pushed her to the ground, threatened her with a knife, and stolen her car. Havercamp, who responded to Whitaker's 911 call, verified that Whitaker had identified Kelly in a photographic identification the day after the incident. Havercamp testified that, based on his observations of Kelly on March 23, 2001, Kelly had matched Whitaker's description. According to Pape, Kelly was driving in Whitaker's Cadillac with five other passengers around 11:30 PM on March 22. Pape testified that, at the time of the arrest, Kelly was wearing a white T-shirt and blue jeans, and his hair was "bunched into approximately five different bundles with rubberbands in each one." Finally, Pape testified he found a knife on Kelly that resembled the knife used against Whitaker.
{¶ 7} While Kelly presented a different version of the facts, particularly Drew Sloan's admission that he had stolen Whitaker's car, and the alibi testimony of Linda and William Morton and Tia and Tenesha Sloan, the jury apparently afforded little weight to that testimony. The jury apparently relied instead on the identification testimony of Whitaker and the two officers, and the officers' testimony that Drew Sloan did not look anything like Kelly, because Drew Sloan was younger, taller, and thinner, and did not have the same hairstyle as Kelly when the offense was committed. Accordingly, we cannot say that the jury lost its way in finding Kelly guilty of robbery and receiving stolen property, or that the jury improperly weighed the evidence.[3] We, therefore, overrule the first assignment of error.
{¶ 8} In the second assignment of error, Kelly maintains that eight instances of prosecutorial misconduct during closing argument denied him a fair trial. In support of this assignment, Kelly's counsel maintains that the cumulative effect of the instances of prosecutorial misconduct rendered the trial prejudicially unfair.
{¶ 9} When we are asked to review prosecutorial misconduct, we are guided by whether the prosecutor made improper remarks, and, if so, whether they prejudicially affected the substantial rights of the accused.[4] The conduct of a prosecuting attorney at trial cannot be made a ground of error unless the conduct deprives the defendant of a fair trial.[5] It is well established that parties are afforded some latitude during closing arguments.[6]
{¶ 10} With these standards in mind, we review the eight comments. At trial, Kelly's counsel objected to five of the comments. Of the five objections raised, two were sustained.
{¶ 11} We first review three comments that were objected to and overruled by the trial court. Those comments related to Drew Sloan's testimony that he had lied to Kelly's defense counsel about his participation in the underlying theft. Sloan testified that he had first told Kelly's defense counsel that he was a lookout for an unnamed third person who had allegedly attacked and robbed Whitaker. Sloan later told Kelly's attorney that he had robbed Whitaker, but he denied attacking Whitaker. During closing argument, the prosecutor stated the following:
 "[Prosecutor]: Only the defendant is going to be charged win [sic] the robbery.
"THE COURT: Overruled.
 "[Prosecutor]: Only him. Drew Sloan. Excuse me. The defendant can never be retried because of something called double jeopardy.
"[Defense counsel]: Objection.
"THE COURT: Overruled.
 "[Prosecutor]: The trick was that Drew Sloan would come in and admit to just a minor crime, snatching the keys out of her hand and getting some kind of slap on the wrist in juvenile.
"[Defense counsel]: Objection.
"THE COURT: Overruled."
{¶ 12} A prosecutor is permitted to make a fair comment about a witness's credibility based upon his testimony, provided that the prosecutor does not invite the jury to go beyond the evidence presented in court.[7] Based on Sloan's testimony, the comments may have been ill-advised; however, given the overwhelming evidence in support of the convictions, we cannot say that the comments denied Kelly a fair trial.
{¶ 13} As for the two comments where objections were sustained, we conclude that, because the trial court adequately admonished the jury to disregard the comments, they did not deny Kelly a fair trial.[8]
{¶ 14} Finally, as for the three comments that were not objected to at trial, we note that the failure to object to statements made by a prosecutor during closing arguments waives all but plain error.[9] In order to prevail on a claim governed by the plain-error standard, Kelly must demonstrate that the outcome of his trial would clearly have been different but for the errors he alleges.[10] When reviewing these comments, we must evaluate them in light of the entire closing argument.[11] Thus, the alleged prosecutorial misconduct constitutes plain error only if it is clear that Kelly would not have been convicted in the absence of the improper comments.[12]
{¶ 15} The three comments related to Whitaker's veracity and credibility as a witness. Having reviewed the three comments, we conclude that they were not improper, as the prosecutor was responding to defense counsel's attack during closing argument that Whitaker was too old to remember everything correctly or to see well. Because a prosecutor has latitude in responding to the arguments of opposing counsel, we conclude that the remarks were not improper.
{¶ 16} In light of our conclusions, we do not believe that the cumulative effect of the prosecutor's comments denied Kelly a fair trial. Accordingly, the second assignment is overruled.
{¶ 17} In the third assignment of error, Kelly maintains that the trial court erred in admitting a written notice of alibi because it was so prejudicial that it denied him a fair trial. The alibi notice stated that Kelly was at his home with seven other individuals attending a bible study at the time of the offenses. During cross-examination of one of the alibi witnesses, Linda Morton, the prosecutor used the alibi notice to impeach Morton. Kelly objected to the use of the notice of alibi, but the trial court overruled the objection. At the close of its case, the state later introduced the notice of alibi into evidence over objections.
{¶ 18} The state argues on appeal that the testimony concerning the notice of alibi was admissible as an admission by a party opponent under Evid.R. 801(D)(2). Evid.R. 801(D)(2) provides that an admission by a party opponent is not hearsay if "the statement is offered against a party * * *." Because such statements are admissions and provable by independent testimony, no foundation is necessary for their introduction as evidence except some demonstration that they were made by the party.[13] "While the term `admission' appears to imply that the out-of-court statement must be a confession or statement against interest, in actuality, any prior statement of a party is admissible providing it is offered against the party at trial."[14] The trial court is accorded discretion in admitting such evidence and determining the application of Evid.R. 801(D)(2).[15]
{¶ 19} According to the state, either Kelly's attorney was authorized to make the alibi statement for the purposes of Evid.R. 801(D)(2)(c) or Kelly's attorney was Kelly's agent for the purposes of Evid.R. 801(D)(2)(d). In State v. Haynes, which is the only Ohio case tending to support the state's argument, the court held that a notice of alibi filed by defense counsel was admissible under Evid.R. 801(D)(2)(c) or 801(D)(2)(d) where the notice was used to impeach the defendant's testimony.[16] Here the alibi notice was not used to impeach Kelly; rather, the notice of alibi was used to impeach Morton, an alibi witness with no knowledge of the alibi notice. Because Kelly's exculpatory statement was not used directly against Kelly on cross-examination, it did not fall under Evid.R. 801(D)(2). We further conclude that the impeachment evidence did not meet the mandates of Evid.R. 613(B) governing the use of prior inconsistent statements to impeach. Given that, the alibi testimony and notice were inadmissible under these circumstances.
{¶ 20} Nevertheless, we hold that the admission of this testimony and the notice did not deprive Kelly of a fair trial because, absent this evidence, the direct and circumstantial evidence introduced at trial against Kelly constituted overwhelming proof of his guilt. Therefore, any error in the admission of this testimony was harmless error.[17]
Accordingly, the third assignment of error is not well taken.
{¶ 21} Kelly maintains in his fourth assignment that the trial court erred when admitting evidence that he was being held in jail during trial, because the evidence was so prejudicial that it denied him a fair trial. Under Kelly's theory, he asserts that jurors must not be able to speculate about an accused's pretrial incarceration.[18] While we agree that it is not a good practice to refer to a defendant's pretrial incarceration, we hold that the probative value of the evidence, in light of Sloan's alibi testimony, was not outweighed by its prejudicial effect.[19] Furthermore, even if we were to assume that it was error to permit this testimony, any error in its admission was harmless given the overwhelming proof of Kelly's guilt. Accordingly, we overrule the fourth assignment of error.
{¶ 22} Finally, Kelly asserts another instance of prosecutorial misconduct in the fifth assignment of error. More specifically, Kelly alleges that some of the questions posed during the prosecutor's cross-examination of Drew Sloan relied upon the prosecutor's own veracity, because the questions were apparently based either on events the prosecutor observed outside the courtroom or on activity that was reported to him as having occurred. We note that Kelly failed to object to these comments; therefore, he has waived all but plain error.
{¶ 23} While we agree that a prosecutor cannot inject his own veracity into the case, we are not convinced that the questioning denied Kelly a fair trial. As we have already determined, our review of the record indicates that overwhelming evidence, particularly the testimony of the victim and the two officers, supported the convictions. The fifth assignment of error is, therefore, overruled, and the trial court's judgment is affirmed.
Judgment affirmed.
Doan, J., concurs.
Painter, P.J., concurs separately.
[1] See State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52,678 N.E.2d 541.
[2] See State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.
[3] See State v. Tompkins, supra, at 387.
[4] See State v. Lott (1990), 51 Ohio St.3d 160, 165,555 N.E.2d 293.
[5] See State v. Apanovitch (1987), 33 Ohio St.3d 19, 24,514 N.E.2d 394.
[6] See id.; State v. Maurer (1984), 15 Ohio St.3d 239, 266,473 N.E.2d 768.
[7] See State v. Mundy (1994), 99 Ohio App.3d 275, 304, 650 N.E.2d 502, citing State v. Price (1979), 60 Ohio St.2d 136, 140, 398 N.E.2d 772.
[8] See State v. Love (1988), 49 Ohio App.3d 88, 91, 550 N.E.2d 951.
[9] See Civ.R. 52(B).
[10] See State v. Long (1976), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph two of the syllabus.
[11] See State v. Keenan (1993), 66 Ohio St.3d 402, 410,613 N.E.2d 203.
[12] See State v. Slagle (1992), 65 Ohio St.3d 597, 604-605,605 N.E.2d 916.
[13] See State v. Thompson (1993), 87 Ohio App.3d 570, 577,622 N.E.2d 735.
[14] State v. Baker (2000), 137 Ohio App.3d 628, 652, 739 N.E.2d 819, quoting Weissenberger's Ohio Evidence (1998) 367, Section 801.33.
[15] See State v. Long, supra, at 98.
[16] See State v. Haynes (Mar. 9 1988), 9th Dist. No. 13258.
[17] See Evid.R. 103(A); Crim.R. 52(A).
[18] See Estelle v. Williams (1976), 425 U.S. 501, 518,96 S.Ct. 1691 (Brennan, J., dissenting).
[19] See Evid.R. 403(A).