JOURNAL ENTRY AND OPINION.
{¶ 1} Defendant-appellant Kahris Williams appeals from his convictions in the Cuyahoga Court of Common Pleas for aggravated murder, attempted murder, aggravated robbery, possession of drugs, and having a weapon while under disability. For the following reasons, we affirm the decision of the trial court.
 {¶ 2} On April 25, 2002, the Cuyahoga County Grand Jury indicted defendant on six counts: one count of aggravated murder with a firearm specification, in violation of R.C. 2903.01; one count of attempted murder with a firearm specification, in violation of R.C. 2923.02/2903.02; two counts of aggravated robbery with firearm specifications, in violation of R.C. 2911.01; one count of possession of drugs, in violation of R.C.2925.11; and one count of heaving a weapon while under disability, in violation of R.C. 2923.13.
 {¶ 3} This case arose from allegations that defendant shot Michael Gibson and Terry Childs while committing a robbery on April 15, 2002. Gibson later died as a result of his injuries and Childs suffered severe physical injuries.
 {¶ 4} On May 7, 2002, defendant entered pleas of not guilty and the case proceeded to trial on August 28, 2002.
 {¶ 5} Prior to trial, defendant filed a motion to suppress his statements given to the police regarding his involvement in the murder and robbery. Defendant asserted that at the time he made the statement, he had not been properly cautioned as required under Miranda v. Arizona
(1966), 384 U.S. 436. Defendant also asserted that he was under the influence of drugs (PCP) at the time he made his statement.
 {¶ 6} At the hearing on the motion, the following evidence was adduced. Officer Daniel Connors testified that he stopped the defendant after he observed him driving a red car at a very high rate of speed and in an erratic fashion. He testified that the defendant gave a vigorous struggle and attempted to drive away several times. Officer Connors testified that he struck the defendant on the side of the head as the defendant reached for the floorboard. Officer Connors testified that a gun was later found on the floorboard. Officer Connors testified that he arrested defendant for reckless operation and failure to show a drivers license. He also testified that he advised defendant of his constitutional rights at that time. Officer Connors testified that defendant was conscious during the arrest but other than the initial struggle was very passive and did not respond to the officers in any manner. On cross-examination, he testified that he suspected defendant was high on drugs at the time.
 {¶ 7} Next, Officer Brian McEntee testified that he assisted in taking the defendant to the scientific lab for gunshot residue testing. He testified that the defendant began talking to him even though he told him at least three times that he did not have to talk to him. After insisting that he wanted to talk, the defendant told Officer McEntee the following: The defendant got into a dispute with Childs and Gibson and Akii Walker with regards to a recent drug purchase. Specifically, the men accused defendant of selling them a broken cigarette containing PCP. The men told defendant to get into their car and were "disrespecting" him. Defendant was afraid that the men were going to beat him up over the bad PCP sale. The driver, Childs, pulled his car to the side of the road, exited the vehicle, and ordered defendant to get out. Childs then produced a gun and attempted to strike defendant with it. The gun went flying and defendant grabbed it. Gibson got out of the car and said "you are messing with my boy." Defendant then shot Gibson and Childs fled in the car. Immediately following defendant's statement, Officer McEntee made a written report of what the defendant had told him. Detective Timothy Entenok testified that he interviewed the defendant after he had spoken with Officer McEntee. He testified that he or his partner read the defendant his Miranda rights and that defendant stated he understood his rights. He testified that defendant stated he would make a written statement. He testified that defendant seemed attentive and coherent during the interview and was able to give his name, date of birth, address, and social security number. He testified that he provided defendant with a written form containing the Miranda warnings. Defendant wrote the word "yes" on the form where it asked if he understood his rights. After telling Detective Entenok the same story he told Officer McEntee, defendant signed the written statement prepared by the officer. Defendant also indicated that he was not under the influence of PCP at the time he was giving his statement. On cross-examination, Detective Entenok testified that he suspected defendant may have been on drugs but that he seemed fine and was not tested for anything.At the conclusion of the suppression hearing, the trial court overruled the defendant's motion. On September 5, 2002, trial commenced. The jury found the defendant guilty of all counts except the aggravated robbery of Michael Gibson (Count III).
 {¶ 8} On October 18, 2002, defendant was sentenced to a total of 56 years. Defendant appeals assigning two assignments of error. Assignment of Error I states:
 {¶ 9} "I. The trial court erred by failing to suppress the appellant's statements that were obtained in violation of Mirandav. Arizona, 384 U.S. 436 (1966)."
 {¶ 10} In his first assignment of error, defendant argues that the trial court erred in denying his motion to suppress. Specifically, defendant argues that he was not properly advised of his rights underMiranda and thus, his statement was not voluntarily made. Defendant also argues that he "may have been" under the influence of drugs (PCP) at the time he made his statement.
 {¶ 11} In a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility. State v. Clay (1973), 34 Ohio St.2d 250. A reviewing court is bound to accept those findings of fact if supported by competent, credible evidence. State v. Schiebel (1990),55 Ohio St.3d 71. However, this court engages in a de novo review of whether the facts meet the appropriate legal standard. State v. Claytor
(1993), 85 Ohio App.3d 623, 627.
 {¶ 12} The Fifth Amendment to the United States Constitution provides persons with a privilege against compelled self-incrimination. The State may not use statements that are the result of custodial interrogation of a defendant unless the prosecution demonstrates the use of procedural safeguards effective to secure this Fifth Amendment privilege. Miranda v. Arizona (1966), 384 U.S. 436, 444. Specifically, an individual must be advised prior to custodial interrogation "that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." Id. These rights may be waived, however, provided the defendant makes the waiver knowingly, intelligently, and voluntarily. Id. The State bears the burden of establishing, by a preponderance of the evidence, that the defendant knowingly, intelligently, and voluntarily waived his Miranda rights based on the totality of the circumstances surrounding the investigation. Statev. Gumm (1995), 73 Ohio St.3d 413, 429.
 {¶ 13} Here, a review of the record demonstrates that competent, credible evidence supports the trial court's finding that the police provided defendant with the warnings required by Miranda. At the suppression hearing, Officer Daniel Connors testified that he advised defendant of his constitutional rights when he arrested him for reckless operation of the vehicle. Officer Brian McEntee testified that although he did not advise defendant of his Miranda rights a second time before defendant indicated his willingness to talk to him, that he told him at least twice that he did not have to talk to him. Detective Timothy Entenok testified that he and his partner interviewed the defendant on the evening of April 15, 2002. He testified that he advised defendant of his Miranda rights twice during the interview and that defendant stated and, in fact, signed a form agreeing that he understood his rights and was nonetheless willing to talk to the detectives.
 {¶ 14} Defendant argues that, in spite of the foregoing testimony, the evidence adduced at the hearing was insufficient to demonstrate that he was afforded the procedural safeguards required byMiranda. Specifically, defendant argues that none of the police officers explicitly advised him of his right to ask for an attorney at any time, including after questioning began or that if he asked for an attorney, that all questioning must stop at once.
 {¶ 15} There is no rigid rule requiring that the content of theMiranda warnings given to an accused prior to police interrogations be a "virtual incantation of the precise language contained in the Miranda
opinion." State v. Dailey (1990), 53 Ohio St.3d 88, 90, citing Californiav. Prysock (1981), 453 U.S. 355. Rather, the requirements of Miranda are satisfied where, prior to the initiation of questioning, the police fully apprise the suspect of the State's intention to use his statements to secure a conviction, and inform him of his rights to remain silent and to have counsel present if he so desires. Dailey, supra 90.
 {¶ 16} Here, three police officers repeatedly testified that defendant was fully advised of his constitutional rights, and that these rights were read from a standard card containing the Miranda rights. Under the totality of the circumstances, we conclude that the testimony by the police officers constitutes competent, credible evidence to support the trial court's finding that defendant was properly administered his Miranda rights by Officer Connors and Detective Entenok. Having been adequately apprised of his rights, defendant knowingly, intelligently, and voluntarily waived them, and willingly provided his statement to the police.
 {¶ 17} Defendant also argues that his statements should have been suppressed because his possible intoxication on PCP rendered his waiver of rights involuntary. We disagree.
 {¶ 18} When a defendant claims that his will was overborne by drugs, the government has the burden of proving by a preponderance of evidence that the statement was voluntary. Lego v. Twomey (1972),404 U.S. 477, 483-484. Here, the State has met its burden. Although there is evidence that defendant may have been under the influence of drugs at the time he made his statement, there is no evidence that the drugs affected his ability to understand his rights or his decision to waive them. Indeed, all of the police officers testified that defendant was coherent, seemed aware of what was going on, listened to the explanation of his rights and seemed to understand what was told to him. Thus, there is no evidence that defendant's possible drug usage affected his ability to understand his rights, and he could knowingly and intelligently waive them. See Edwards and Dailey, supra. Based on a totality of the circumstances, we conclude that the State met its burden of demonstrating that defendant's confession was voluntary.
 {¶ 19} Defendant's first assignment of error is overruled.
 {¶ 20} "II. Prosecutor misconduct during the closing argument of the culpability phase of trial deprived the appellant his right to a fair trial in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution."
 {¶ 21} In his second assignment of error, defendant argues that he was unfairly prejudiced when the State made improper statements during closing arguments. We disagree.
 {¶ 22} Here, the prosecutor in his closing statement made the following statements with regard to the defendant's rendition of the events leading to the death of Michael Gibson:
 {¶ 23} "Prosecutor: How many bullet holes does Michael Gibson have in him? Look at them. Mr. Shaughhnessy's tortured explanation * * *.
 {¶ 24} "Defense Counsel: Objection.
 {¶ 25} "The Court: Sustained. (Tr. 1783).
 {¶ 26} "Prosecutor: Mr. Shaughhnessy's feeble explanation * * *.
 {¶ 27} "Defense Counsel: Objection.
 {¶ 28} "The Court: Sustained. (Tr. 1783).
 {¶ 29} "Prosecutor: Mr. Shaughhnessy's absurd explanation * * *.
 {¶ 30} "Defense Counsel: Objection.
 {¶ 31} "The Court: Sustained. (Tr. 1783).
 {¶ 32} "* * *.
 {¶ 33} "Prosecutor: Incidentally, whose gun is this? * * * The only evidence that you have that this is anybody else's but his is what he tells the coppers in his statement, some absurd B movie rendition about the gun falling on the ground and he picks it up and * * *.
 {¶ 34} "Defense Counsel: Objection.
 {¶ 35} "The Court: Sustained. (Tr. 1786).
 {¶ 36} "Prosecutor: Oh, incidentally, one of the absurdities of the defense's argument * * *.
 {¶ 37} Defense Counsel: Objection.
 {¶ 38} The Court: Sustained. (Tr. 1791)."
 {¶ 39} The prosecutor is entitled to a certain degree of latitude in summation and may draw reasonable inferences from the evidence presented at trial and comment upon those inferences during closing statements. State v. Treesh (2001), 90 Ohio St.3d 460, 466. The test regarding prosecutorial misconduct in closing statements is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant. State v. Smith (1984),14 Ohio St.3d 13, 14. A conviction will only be reversed on a claim of prosecutorial misconduct if it is clear beyond a reasonable doubt that, absent the prosecutor's remarks, the jury would not have found the defendant guilty. State v. Benge (1996), 75 Ohio St.3d 136.
 {¶ 40} Here, we find no error in the prosecutor's closing statements individually or taken as a whole. His references to tortured, feeble, and absurd explanations were made to focus the juries' attention on the inconsistencies between defendant's pretrial statements and his subsequent defense of self-defense at trial. The State is permitted to comment on the testimony of a defendant, and may suggest a logical conclusion that is to be drawn therefrom. State v. Thompson (1993),87 Ohio App.3d 570, 582. The State is also permitted to state that the evidence supports the conclusion that a defendant is lying, is not telling the truth, is scheming, or has ulterior motives for not telling the truth. State v. Draughn (1992), 76 Ohio App.3d 664, 670. Further, in cases regarding prosecutorial misconduct, where the trial court has sustained an objection and provided a curative instruction to the jury, we must presume the jury followed the trial court's instructions. Statev. Raglin (1998), 83 Ohio St.3d 253.
 {¶ 41} Defendant's second assignment of error is overruled.
Judgment affirmed.
MICHAEL J. CORRIGAN, P.J., and PATRICIA A. BLACKMON, J., concur.