OPINION
{¶ 1} On November 26, 2001, Denise Eidens and her daughter were living in an upstairs apartment at 2158 Gary Avenue in Ashtabula, Ohio. At trial, Eidens testified that appellant, James Runnion, had been living with them at that address for about four months, but moved out approximately a week or two prior to November 26, 2001. Although evidence indicated that appellant and Eidens were romantically involved as far back as 1998,[1]
Eidens testified she kicked appellant out because he was married. According to Eidens, appellant moved into his mother's house where he lived with his mother, wife, two brothers, a sister, and several of their children.
 {¶ 2} Edward and Shannon Anderson testified to residing with Eidens for a brief period in late 2001. The Andersons were mutual friends of both appellant and Eidens prior to Thanksgiving, 2001. However, on November 25, 2001, Mrs. Anderson testified that she and Eidens were involved in a fight. According to Mrs. Anderson, the fight developed over a dispute involving Mrs. Eidens use of the Andersons' money to purchase marijuana. Eidens pushed Mrs. Anderson and Mrs. Anderson responded by allegedly punching Eidens in the eye. The Andersons subsequently left the apartment.
 {¶ 3} On November 26, 2001, Mr. Anderson testified that he returned to Eidens' apartment to retrieve the couples' belongings. Mr. Anderson was joined by his father, a friend, and appellant. They finished moving around 8:00 p.m. and Mr. Runnion alleged he returned to his residence for the remainder of the evening.
 {¶ 4} At 10:00 p.m. on the same night, Eidens testified that she and her daughter were home alone when she heard the downstairs door leading to her apartment being unlocked. She heard footsteps on the stairs and her door opened. When she observed appellant standing in the doorway, she asked him what he was doing in her home. Appellant indicated he returned because he loved her and wanted to "work things out." Eidens stated that, for this to occur, appellant must first divorce his wife. According to Eidens, appellant inquired whether she was seeing someone else. Although she told him she was not "with" anyone, appellant was incredulous. Eidens testified that appellant subsequently exclaimed that if he could not "have" Eidens, no one could. According to Eidens, appellant then procured a paring knife from the kitchen and placed the knife to her throat. During the struggle, appellant allegedly punched Eidens. After Eidens' daughter emerged from her bedroom, Eidens rushed to protect the child; at this point, appellant fled the apartment.
 {¶ 5} Eidens left her home and called the police from a friend's residence. Eidens' met with members of the Ashtabula Police Department. The investigating officer noted bruising and a cut or scrape to Eidens' left eye as well as a lump on her forehead.
 {¶ 6} On February 7, 2002, appellant was indicted on one count of felonious assault, in violation or R.C. 2903.11(A)(2), a felony of the second degree, and domestic violence, in violation of R.C. 2919.25(A), a felony of the fifth degree pursuant to R.C.2919.25(D). Appellant pleaded not guilty to these charges and a jury trial commenced on January 13, 2003. On January 14, 2003, appellant was convicted on both charges. Appellant was sentenced to a three year term of incarceration on the felonious assault conviction and a twelve month term of the domestic violence conviction, both sentences to be served concurrently.
 {¶ 7} Appellant now appeals and raises the following assignment of error:
 {¶ 8} "The defendant-appellant was denied the effective assistance of counsel, contrary to his rights guaranteed by theSixth and Fourteenth Amendments of the United States Constitution and Section 10, Article I, of the Ohio Constitution."
 {¶ 9} In his sole assignment of error, appellant argues that defense counsel's representation was ineffective because: (1) counsel failed to object to the prosecution's use of the notices[2] of alibi to impeach the defense; (2) there were errors within appellant's notices of alibi prepared and filed by counsel; and (3) counsel failed to meaningfully cure the errors for which he was responsible.
 {¶ 10} When reviewing an allegation of ineffective assistance of counsel, we employ a two-step process: First, we must determine whether there has been a substantial violation of any of defense counsel's basic duties to his client. State v.Bradley (1989), 42 Ohio St.3d 136, 141. Second, and analytically separate from the question of counsel's performance, we observe whether the defense was prejudiced by counsel's acts or omissions. Id. To establish prejudice, an appellant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of trial would have been different." State v.Goodwin (1998), 84 Ohio St.3d 331, 334. However, as there are innumerable ways in which counsel might effectively represent a defendant, judicial scrutiny of counsel's performance must be highly deferential. Bradley, supra, at 142. Thus, a reviewing court indulges in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.
 {¶ 11} During trial, the prosecution utilized the notices of alibi to impeach certain defense witnesses. First, during the state's cross examination of Ed Anderson, the prosecutor queried:
 {¶ 12} "Q. Sir, are you aware that defense counsel filed a Notice of Alibi stating that prior to 10:00 P.M., November 26th, this defendant was with you and your wife at 333 South Market Street, Jefferson, Ohio?
 {¶ 13} "A. No, I don't. He called me from his mom's house.
 {¶ 14} "Q. So, that's false. The defendant was not with you at 333 South Market Street in Jefferson on November 26th?
 {¶ 15} "A. No."
 {¶ 16} Appellant points out that Mr. Anderson neither authored nor had any knowledge of the January 3, 2003 notice of alibi. These facts notwithstanding, appellant notes, defense counsel failed to object to this line of questioning.
 {¶ 17} Appellant fails to point out the precise nature of the error to which counsel should have objected. However, from the context of the argument, we can envision two specific problems with the prosecution's use of the January 3, 2003 notice. First, it is possible to infer a facial hearsay problem inherent in the state's use of the notice. However, a notice of alibi filed by a defendant has been held admissible for purposes of impeachment as an admission by a party-opponent pursuant to Evid.R. 801(D)(2)(a). State v. Haynes (Mar. 9, 1988), 9th Dist. No. 13258, 1988 Ohio App. LEXIS 787, 4; see, also, State v. Kelly,
1st Dist. No. C-010639, 2002-Ohio-6246, ¶ 27. A notice of alibi filed by defense counsel is similarly admissible under Evid.R. 801(D)(2)(c) or Evid.R. 801(D)(2)(d). Id.
 {¶ 18} An admission by a party opponent is not hearsay if the statement is offered against the party. Evid.R. 801(D)(2). Because such statements are admissions and provable through independent testimony, no foundation is necessary for their introduction aside from some demonstration that they are made by a party. State v. Thompson (1993), 87 Ohio App.3d 570, 577. Such an out-of-court statement is admissible providing it is offered against the party at trial. State v. Baker (2000),137 Ohio App.3d 628, 652. The trial court is accorded wide discretion in admitting such evidence and determining the application of Evid.R. 801(D)(2). Kelly, supra, at ¶ 26.
 {¶ 19} Here, however, the alibi notice was not used to impeach appellant. Rather, it was brought up during cross-examination of Ed Anderson, a defense witness with no knowledge of the alibi notice. Because appellant's exculpatory statement was not used directly against him on cross-examination, it did not fall under Evid.R. 801(D)(2).
 {¶ 20} That said, the state's reference to the January 3, 2003 notice of alibi during its cross examination of Ed Anderson did not question the veracity of Anderson's testimony, i.e., it was not a direct impeachment;[3] rather, it tended to challenge the credibility of appellant's alibi via the testimony of one of his own witnesses. As the reference to the notice of alibi was not a technical impeachment of the witness at whom the reference was directed, we see no evidentiary problems. In this respect, defense counsel's failure to object was not error and thus appellant fails to meet the first prong of the ineffective assistance inquiry as he cannot demonstrate a deficiency in defense counsel's performance.
 {¶ 21} The second, and perhaps more problematic issue attending to the prosecutor's use of the January 3, 2003 notice emanates from her mischaracterization of the content of the notice. The January 3, 2003 notice of alibi reads:
 {¶ 22} "On Monday, November 26, 2001 defendant was in the presence of his wife, Milena Runnion at his residence at 5836 Washington Ave, Ashtabula, Ohio from 10:00 pm at his residence and never had contact with the alleged victim. Prior to 10:00 pm November 26, 2001 he was in the presence of Shannon Anderson, 333 South Market Street, Jefferson, Ohio and Edward Anderson, Sr., of the same address." (sic.)
 {¶ 23} When read in its entirety, the notice does not necessarily indicate that appellant was at the Anderson residence prior to 10:00 p.m. on November 26, 2001; rather, the notice merely alleges that appellant was in the presence of the Andersons, who resided at 333 South Market Street, Jefferson, Ohio, prior to 10:00 p.m. on November 26, 2001. Although defense counsel neither objected to nor rehabilitated Mr. Anderson on this ostensible misreading, the jurors had the exhibits with them during their deliberations and were able to interpret and draw their own conclusions from the document itself.
 {¶ 24} Moreover, during the state's cross-examination of appellant, appellant unequivocally testified that he was at home after 10:00 p.m. on November 26, 2001 and denied the veracity of the prosecution's characterization of the January 3, 2003 notice. In this respect, we hold any error resulting from counsel's failure to object harmless and therefore defense counsel's error did not prejudice appellant's defense.
 {¶ 25} Next, during the state's cross-examination of appellant, the prosecutor effectively threw appellant's January 3, 2003 alibi into question by directing the jury's attention to the date on which it was filed. During her cross-examination of appellant, the prosecutor clarified that appellant had been in contact with his attorney for approximately one year and two months. With this in mind, the prosecutor queried:
 {¶ 26} "Q. Now, Mr. Runnion, you had numerous meetings with your attorney over the last year and two months, correct?
 {¶ 27} "A. Yes.
 {¶ 28} "Q. And the time stamp on this [notice of alibi] is January 3, 2003?
 {¶ 29} "A. Yes.
 {¶ 30} "Q. Ten days ago?
 {¶ 31} "A. Yes.
 {¶ 32} "Q. If I tell you that this says, according to your alibi, that prior to 10:00 p.m. on November 26, 2001, specifically it says he was in the presence, referring to you, of Shannon Anderson at 333 South Market Street, Jefferson, Ohio, and Edward Anderson, Sr., of the same address?
 {¶ 33} "A. No, I was at home at 10 o'clock p.m.
 {¶ 34} "Q. So, this is incorrect?
 {¶ 35} "A. Yes."[4]
 {¶ 36} On re-direct, in an attempt to rebut the prosecutor's line of questioning, defense counsel brought out the fact that appellant filed an initial notice of alibi on May 31, 2002. During his re-direct, however, a typographical error in the original notice was disclosed:
 {¶ 37} "Q. And this says, if I read it, `Now comes the defendant and pursuant to Criminal Rule 12.1, submits his Notice of Alibi. On Sunday, November 25th of 2001, was in the presence of his wife, Milena Runnion, and Jennifer Runnion at his residence of 5836 Washington Avenue at, approximately, 8:20 p.m. and never left the premises.
 {¶ 38} "A. Yes.
 {¶ 39} "Q. I'm sorry, that would be a wrong date. The real date should have been Monday, November 26th?
 {¶ 40} "A. Yes."[5]
 {¶ 41} Appellant contends that the prosecutor's reference to the date of the January 3, 2003 notice of alibi was error. Specifically, appellant contends that a prosecutor cannot use the fact that a notice of alibi was not filed promptly after an arrest to infer the alibi is false. See, State v. Sims (1982),3 Ohio App.3d 331, 333. According to Sims, such a practice is an attempt to adduce evidence concerning the prior silence of the accused which violates an accused's right to due process. Id. Under the circumstances, the prosecutor's line of questioning dealing with the time at which the second notice of alibi was filed was inappropriate. Under Crim.R. 12.1, a notice of alibi need not be filed until seven days before trial. Therefore, appellant's second notice of alibi, filed ten days before trial, was filed within the time limits stipulated by the governing rule.
 {¶ 42} That said, we believe the prosecutor's reference to the filing date of the second notice of alibi was harmless. Immediately following the prosecutor's discussion of the filing time of the second notice of alibi, defense counsel, on re-direct, pointed out that an original notice of alibi was filed on May 31, 2002. Notwithstanding the erroneous date set forth on the May 31, 2002 notice, which defense counsel addressed in open court, the two notices of alibi, when read together, do not exhibit any necessary contradictions. Thus, although the prosecutor improperly adduced evidence showing that the January 3, 2003 notice of alibi was not filed promptly after the arrest, she did not adduce evidence concerning appellant's "prior silence" because his original notice, containing the same substantive alibi, was filed over six months earlier.
 {¶ 43} In sum, defense counsel responded promptly to the prosecutor's questions regarding the timing of the second notice of alibi effectively rehabilitating appellant on this matter. In this regard, we believe appellant has failed to show deficient performance on defense counsel's behalf. Moreover, defense counsel addressed the erroneous date as soon as it came to the jury's attention. Thus, appellant has failed to set forth a coherent claim for ineffective assistance of counsel.
 {¶ 44} Appellant finally complains that the prosecutor improperly impeached him with the notices of alibi of which he was not the author and which, by counsel's own admission, contained a typographical error. As indicated above, courts have held that a notice of alibi, submitted by defense counsel, is admissible under Evid.R. 801(D)(2)(c) or 801(D)(2)(d), for purposes of impeachment. See, Haynes, supra; see, also,Kelly, supra. Here, the state utilized the notices of alibi against appellant to impeach his version of the facts, particularly with reference to the time he claimed to be at home and the time he spent with Ed Anderson. As the notices of alibi may be treated as an admission by a party opponent, defense counsel's failure to object to the state's use of these documents was not error.
 {¶ 45} However, even were we to reject the evidentiary rule set forth in Haynes and acknowledged in Kelly and hold that defense counsel's failure to object was error, appellant suffered no prejudice from defense counsel's omission.
 {¶ 46} When addressing prejudice, a court must observe whether "there is a reasonable doubt that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."Strickland v. Washington (1984), 466 U.S. 668, 695. In making this determination, an appellate court hearing an ineffectiveness claim must consider the totality of the evidence before the jury. Id.
 {¶ 47} Under the circumstances, the state put forth evidence that appellant assisted Ed Anderson, et al., in moving Anderson's belongings from the victim's home on the evening in question. Appellant set forth an alibi which, in substance, alleged he did not commit the crime because he was at his residence when the assault occurred. However, certain specific facts attending to appellant's alibi were inconsistent with witness testimony.[6] Due to such inconsistencies, in addition to other evidence impugning the testimony of certain defense witnesses, the credibility of the defense was placed into substantial question.
 {¶ 48} However, the state's main witness, the victim, Denise Eidens, testified to a coherent, lucid version of the events. Eidens testified that appellant had stayed with her for some four months until she "kicked him out" two weeks prior to the incident because he was married. According to Eidens, on the evening in question, appellant opened the door to her apartment and announced that he wanted to "get back" with her. When she instructed him to divorce his wife, he asked her who she was dating; when she told him she was "with" no one, he attacked her, punching her in the eye and putting a knife to her throat. After appellant left, Eidens called the police and Officer Skip Gray responded. At trial, Officer Gray[7] testified that Eidens' injuries were fresh and "just starting to bruise up from the blood that would collect around them." Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, we hold that appellant has not met the burden of demonstrating that the decision reached would reasonably likely have been different absent the errors of defense counsel. See, Strickland, supra, at 696.
 {¶ 49} Appellant's sole assignment of error is without merit.{¶ 50} For the above reasons, the jury verdict of the Ashtabula County Court of Common Pleas is hereby affirmed.
Grendell, J., Nader, J., Ret., Eleventh Appellate District, sitting by assignment, concur.
[1] Eidens testified that in May of 1998, appellant was convicted of domestic violence in an incident where she was the victim.
[2] Appellant's counsel prepared and filed two notices of alibi on appellant's behalf: The first notice was filed on May 31, 2002 and read: "On Sunday November 25, 2001, defendant was in the presence of his wife, Milena Runnion, his sister Jennifer Runnion at his residence 5836 Washington Avenue, Ashtabula, OH from approximately 8:20 and never left their presence." On January 3, 2003, defense counsel filed the second notice of alibi, which read: "On Monday, November 26, 2001 defendant was in the presence of his wife, Milena Runnion at his residence at 5836 Washington Ave, Ashtabula, Ohio from 10:00 pm at his residence and never had contact with the alleged victim. Prior to 10:00 pm November 26, 2001 he was in the presence of Shannon Anderson, 333 South Market Street, Jefferson, Ohio and Edward Anderson Sr., of the same address." (sic.)
[3] Were the prosecutor's reference to the January 3, 2003 notice of alibi an attempt to impeach the witness, it would be improper as it failed to meet the mandates of Evid.R. 613(B) governing the use of prior inconsistent statement so impeach. Evid.R. 613(B) has a threshold requirement that the statement used for impeachment be made by that witness; here, the notice of alibi was not made by Ed Anderson.
[4] In fact, the language within the notice of alibi and appellant's claim that he was at home at 10 o'clock p.m. do not contradict. Here, the prosecutor's reference to the January 3, 2003 notice is inconsequential.
[5] During closing argument defense counsel emphasized that the erroneous date in the May 31, 2002 notice of alibi was an accidental mistake of which he took the entire blame: "* * * I would like to say to you and apologize this case has been a comedy of errors on my part. You will see and you will have in evidence Notice of Alibi which was submitted on May 31st, has the wrong date. * * * We did present evidence to you of alibi that on Monday, November 26th, that James was not there at the time that this is alleged to have occurred. Again, these errors should be held against me not James but you have heard the correct time."
[6] Appellant alleged in his January 3, 2003 notice of alibi that his was in the presence of Ed and Shannon Anderson prior to 10:00 p.m. on November 26, 2001. However, Shannon Anderson testified that she was with her mother-in-law all night while Edward and appellant retrieved the couple's belongings from Denise Eidens' house. Further, Jennifer Runnion, appellant's sister, testified that appellant returned home, on the night in question, around 8:20 p.m., the exact time appellant alleged he returned home in his May 31, 2002 notice of alibi; when questioned regarding the extreme precision of her claim, Ms. Runnion stated she had "a good memory on time." However, Ms. Runnion testified that police arrived around 9:30 or 9:45 p.m. to arrest appellant; this contradicts appellant's January 3, 2003 notice of alibi which states he was at home after 10:00 p.m. Further, the prosecution went to great lengths to impeach the defense witnesses regarding why, if appellant was arrested and they knew he did not commit the crime because he was at home, they did not give immediate statements to the police.
[7] Officer Gray testified that he was a professional boxer from the age of sixteen through the age of fortynine; during this time he had many occasions to view fresh cuts and bruises resulting from punches. Moreover, Officer Gray testified that he had nearly forty years experience as a law enforcement officer during which he had responded to "several hundred" domestic violence calls involving physical attacks.