[Cite as *State v. Justice*, 2011-Ohio-4004.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES: |
| | Hon. W. Scott Gwin, P. J. |
| Plaintiff-Appellee | Hon. William B. Hoffman, J. |
| | Hon. John W. Wise, J. |
| -vs- | |
| | Case No. 10 CA 41 |
| ALONZO JUSTICE | |
| | |
| Defendant-Appellant | O P I N I O N |

CHARACTER OF PROCEEDING:           Criminal Appeal from the Court of Common
                                   Pleas, Case No.  09 CR 50

JUDGMENT:                          Affirmed in part; Vacated in part;
                                   and Remanded

DATE OF JUDGMENT ENTRY:            August 10, 2011

APPEARANCES:

For Plaintiff-Appellee              For Defendant-Appellant

GREGG MARX                          THOMAS R. ELWING
ASSISTANT PROSECUTOR                60 West Columbus Street
230 West Main Street, Suite 101     Pickerington, Ohio  43147
Lancaster, Ohio  43130

*Wise, J.*

{¶1} Appellant appeals his conviction and sentence entered in the Fairfield County Court of Common Pleas following a trial by jury.

{¶2} Appellee is the State of Ohio.

### STATEMENTS OF FACTS AND CASE

{¶3} The relevant facts are as follows:

{¶4} Appellant, Alonzo Justice, was wanted on an outstanding arrest warrant for drug trafficking charges in an unrelated case.

{¶5} On February 8, 2009, officers of the Lancaster Police Department received a telephone call from a named citizen informant known to one of the officers regarding Appellant's whereabouts. Acting on the tip, three uniformed officers arrived at a private residence located at 523 N. Broad Street, and knocked on the door. Celina Fellers answered the door and denied that she knew a person by the name of Alonzo Justice.

{¶6} Officer Kirk Cressley requested permission to enter the apartment to search for Appellant. (T. at 440). Ms. Fellers granted permission for the officers to come in and search for Appellant. The residence was a small apartment with two bedrooms. When the officers first entered, they observed two other adult residents and a small child. The other adults were later determined to be Celina's husband, Joseph Fellers, Brandy Brady and the three-year-old daughter of Celina Fellers.

{¶7} Officer Cressley proceeded to search the apartment for Appellant. Upon entering the second bedroom, he observed what appeared to be two razor blades and a digital scale laying in plain view next to a mattress on the floor. (T. at 452-453). He

also observed a baggie of what he suspected was powdered cocaine laying on the floor in plain view. (T. at 458). Officer Cressley also saw what he suspected to be crack cocaine next to the drug paraphernalia on the floor. (T. at 454).

{¶8} Prior to securing the drugs and drug paraphernalia, Officer Cressley looked in the closet where he found an African American male standing there looking at him. (T. at 447). The man initially denied he was Alonzo Justice; however, Officer Cressley was able to determine with a photo identification that the man was in fact Alonzo Justice. (T. at 449). Officer Cressley removed Appellant from the closet and took him to the kitchen, where he was placed in the custody of Officer Mears.

{¶9} Officer Cressley then went back to the bedroom to secure the items he had observed in the room. (T. at 448). When Officer Cressley went to retrieve the powdered cocaine, he observed part of another baggie sticking out from under a mattress. The second baggie appeared to contain crack cocaine. Both baggies were seized by the police. (T. at 454, 457).

{¶10} Officer Cressley then returned to the closet where Appellant had been hiding and found a small black duffel bag sitting on the shelf in the closet. (Supp.T. at 78-80; T. at 450-451). This bag was opened and a number of items were found inside, including two glass containers with white powder residue, a box of baking soda, a metal colander and a spatula. (Supp. T. at 77-78; T. at 451). At trial, the State presented evidence that the items in the gym bag were commonly used in the manufacture of crack cocaine.

{¶11} After Appellant was taken into custody, additional officers arrived on the scene to process the evidence and question the apartment residents. Appellant

declined to make any statements. The other three residents all made statements denying that they had ever possessed the powdered or crack cocaine discovered by Officer Cressley. Ms. Brady did admit, however, that she shared the bedroom where drugs were found with Mr. Justice.

{¶12} Based on evidence obtained from the search and seizure, Appellant was indicted on a first degree felony for illegal manufacture of crack cocaine in the vicinity of a juvenile, a second degree felony for possession of 10 to 25 grams of crack cocaine, and a fifth degree felony for possession of an unspecified amount of cocaine.

{¶13} On December 23, 2009, Appellant moved the trial court to suppress all evidence seized by the police.

{¶14} On January 14, 2010, a hearing was held on Appellant's Motion to Suppress and by Judgment Entry filed January 19, 2011, the trial court overruled the motion.

{¶15} On May 11-12, 2010 the case proceeded to jury trial. The jury returned convictions on all three counts of the indictment.

{¶16} After trial, the defense made a motion to merge the three convictions as allied offenses for purposes of sentencing. The trial court granted the merger and allowed the prosecuting attorney to elect the charge for which Mr. Justice would be sentenced. The prosecution elected sentencing on the first degree felony manufacture of crack cocaine in the vicinity of a juvenile. The trial court imposed a prison sentence of seven (7) years to run consecutive to another prison sentence Appellant is now serving on unrelated drug trafficking charges associated with the arrest warrant discussed above.

{¶17} Appellant now appeals his conviction, setting forth the following assignments of error:

**ASSIGNMENTS OF ERROR**

{¶18} "I. THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS AND ADMITTING EVIDENCE OF CRACK COCAINE AND ITEMS ASSOCIATED WITH THE MANUFACTURE OF CRACK COCAINE IN VIOLATION OF APPELLANT'S RIGHTS UNDER THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 14, ARTICLE I OF THE OHIO CONSTITUTION.

{¶19} "II. THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S CRIMINAL RULE 29(A) MOTION FOR ACQUITTAL BECAUSE THE STATE'S EXPERT WITNESS COULD NOT VERIFY THAT ALLEGED CRACK COCAINE WAS CRACK COCAINE AS DEFINED BY THE OHIO REVISED CODE, THERE WAS NO LABORATORY ANALYSIS OF COCAINE, AND THERE WAS A SUBSTANTIAL BREAK IN THE CHAIN OF CUSTODY. THUS, THE TRIAL COURT'S RULING ON THE MOTION FOR ACQUITTAL WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE AND THE CONVICTIONS ON ALL COUNTS OF THE INDICTMENT WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

**I.**

{¶20} In his first assignment of error, Appellant argues that the trial court erred in overruling his motion to suppress.

{¶21} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact.

In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. *State v. Fanning* (1982), 1 Ohio St.3d 19, 437 N.E.2d 583; *State v. Klein* (1991), 73 Ohio App.3d 486, 597 N.E.2d 1141; *State v. Guysinger* (1993), 86 Ohio App.3d 592, 621 N.E.2d 726. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *State v. Williams* (1993), 86 Ohio App.3d 37, 619 N.E.2d 1141. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry* (1994), 95 Ohio App.3d 93, 641 N.E.2d 1172; *State v. Claytor* (1993), 85 Ohio App.3d 623, 620 N.E.2d 906; *Guysinger.* As the United States Supreme Court held in *Ornelas v. U.S.* (1996), 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911, "... as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal."

{¶22} When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate the credibility of witnesses. See *State v. Dunlap,* 73 Ohio St.3d 308, 314, 1995–Ohio–243, 652 N.E.2d 988; *State v. Fanning* (1982), 1 Ohio St.3d 19, 20, 437 N.E.2d 583.

{¶23} Appellant herein argues that the drugs and drug paraphernalia in the case sub judice were unlawfully seized and should have been suppressed. Appellant specifically challenges the "unlawful entry" into his bedroom and the warrantless search of his duffel bag.

{¶24} Appellant does not dispute that Celina Fellers, a co-tenant of the premises, had authority to consent to search the common areas of the apartment, but argues that her consent did not extend to his bedroom.

{¶25} Upon review of the facts, we find that while Ms. Fellers did grant permission to the officers to enter the premises to search for Appellant, the officers did not need such consent as they were executing a valid arrest warrant.

{¶26} In *Payton v. New York* (1980), 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639*,* the United States Supreme Court was presented with a New York State statute that allowed the police to enter a private residence without a warrant, consent, or exigent circumstances.. The *Payton* Court held that "for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." Id. at 603. Accordingly, pursuant to *Payton,* an arrest warrant is sufficient to enter a person's residence to effectuate the warrant, if the police have reason to believe that the suspect lives in the home and is in fact at the home at the time the arrest warrant is executed.

{¶27} We find that the arrest warrant in this case was based on probable cause as the police had been informed by one of Appellant's co-workers that she dropped Appellant off at this address.

{¶28} Next, we find that the crack cocaine, powder cocaine, razor blades and digital scale were all found in plain view in the bedroom, which the officers noticed while searching for Appellant prior to locating him hiding in the closet.

{¶29} It has long been settled that objects falling within the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced as evidence. *Ker v. California* (1963), 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726; *State v. Williams* (1978), 55 Ohio St.2d 82, 85, 377 N.E.2d 1013.

{¶30} Testimony was adduced at the hearing that when Officer Cressley went into the second bedroom where Appellant was eventually located, he readily observed a digital scale, razor blades and two plastic baggies containing what appeared to be cocaine. Thus, the items were in plain view.

{¶31} Based on the foregoing, we find that the drugs and drug paraphernalia were validly seized.

{¶32} With regard to the search and seizure of the duffel bag located in the closet containing the colander, spatula, glass container and baking soda, we find such seizure to be more troublesome.

{¶33} The protections of the Fourth Amendment apply to searches of articles and places which, by their nature and condition, demonstrate that the public has a justifiable expectation of privacy in them and their contents. Receptacles that are closed and have been secured against intrusion demonstrate that expectation. *United States v. Chadwick* (1977), 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538. Typical examples are: foot lockers, *Chadwick, supra;* suitcases, *Florida v. Royer* (1983), 560 U.S. 491, purses, *Rawlings v. Kentucky* (1980), 448 U.S. 98, 100 S.Ct. 2556, 65

L.Ed.2d 633; duffel bags, *Frazier v. Cupp* (1969), 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684; letters, *United States v. Van Leeuwen* (1970), 397 U.S. 249, 90 S.Ct. 1029, 25 L.Ed.2d 282; and boxes of all types. Even brown paper bags, *California v. Acevedo* (1991), 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619, and cigarette packages, *United States V. Robinson* (1973), 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427, qualify.

{¶34} Under the plain view exception to the search warrant requirement, police may seize evidence in plain view during a lawful search if (1) the seizing officer is lawfully present at the place from which the evidence can be plainly viewed; (2) the seizing officer has a right of access to the object itself; and (3) the object's incriminating character is immediately apparent. *Horton v. California* (1990), 496 U.S. 128, 136-37.

{¶35} In the instant case, the drug paraphernalia was inside of a closed, black duffel bag. We therefore find that the contents of the bag were not immediately apparent to Officer Cressley.

{¶36} We further find that the search of the closet and seizure of the duffel bag was not authorized as a search incident to arrest.

{¶37} It is well settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement. *Weeks v. United States* (1914), 232 U.S. 383, 392; *Chimel v. California* (1969), 395 U.S. 752, 755. In *Chimel,* the United States Supreme Court considered the permissible scope of a search incident to a lawful arrest under the Fourth Amendment. In that case three police officers came to the defendant's home with a warrant authorizing his arrest.

{¶38} In *Chimel*, the Court held:

{¶39} " * * * When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control' - construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." *Chimel,* supra, at 762-763.

{¶40} In *Arizona v. Gant* (2009), 129 S.Ct. 1710, the United States Supreme Court further explained its holding in *Chimel*:

{¶41} "In *Chimel,* we held that a search incident to arrest may only include 'the arrestee's person and the area "within his immediate control"- construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.' *Ibid.* That limitation, which continues to define the boundaries of the exception, ensures that the scope of a search incident to arrest is commensurate with its purposes of protecting arresting officers and safeguarding any evidence of the offense of arrest that an arrestee might conceal or destroy. * * *. If there is no possibility that an arrestee could reach into the area that law enforcement officers seek

to search, both justifications for the search-incident-to-arrest exception are absent and the rule does not apply. * * * ”.

{¶42} Here, according to the testimony presented at the suppression hearing, Officer Cressley stated that he only observed the duffel bag upon returning to the bedroom to collect the drugs he observed in plain view after he had removed Appellant from the closet and turned him over into the custody of other officers in the kitchen.  He testified that he went back to the closet because he “knew [Appellant’s] past and his prior incidents.  With me pulling [Appellant] out of the closet and not initially checking for a weapon, due to the other residents being in that house, if there was a weapon in there, I did want to make sure it was secured and not theirs.” (Supp.T. at 78).

{¶43} Officer Cressley stated that it was only at that time he noticed the bag sitting on a shelf which would have been directly above Appellant’s head when he was in the closet.  (Supp. T. at 79).  He stated that he opened the bag and discovered that it contained items which could be used to manufacture crack cocaine and that there was a white powder residue on the items (Supp.T. at 80).

{¶44} Upon review, we find that the duffel bag in question was no longer in the area within Appellant’s immediate control, such search was not necessary to ensure the safety of  the police officers.  Appellant was already in custody, in another room. The bag was closed and it was not immediately apparent to the officer that the bag contained drug paraphernalia. We therefore find that it was therefore unlawful for the police to search and seize the bag and its contents.

{¶45} Based on the foregoing, we hold that the trial court erred in finding the search and seizure of the duffel bag and its contents was justified in this case

{¶46} Accordingly, we affirm the trial court's denial of the motion to suppress as to baggies of powder and crack cocaine, the razor blades and the digital scale. We overrule the trial court's denial of the motion to suppress as to the duffel bag and its contents.

{¶47} Appellant's first assignment of error is affirmed in part and reversed in part.

## II.

{¶48} In his second assignment of error, Appellant argues that the trial court erred in overruling his Crim.R. 29 motion for acquittal and that his convictions were against the manifest weight and sufficiency of the evidence.

{¶49} Appellant alleges that the trial court erred in not granting his Crim.R. 29 motion for acquittal at the conclusion of the state's case. In determining whether a trial court erred in overruling an appellant's motion for judgment of acquittal, the reviewing court focuses on the sufficiency of the evidence. See, e.g., *State v. Carter* (1995), 72 Ohio St.3d 545, 553, 651 N.E.2d 965, 974; *State v. Jenks* (1991), 61 Ohio St.3d 259 at 273, 574 N.E.2d 492 at 503.

{¶50} The function of an appellate court on review is to assess the sufficiency of the evidence "to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. In making this determination, a reviewing court must view the evidence in the light most favorable to the prosecution. *Id.; State v. Feliciano* (1996), 115 Ohio App.3d 646, 652, 685 N.E.2d 1307, 1310-1311.

{¶51} While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest-weight challenge questions whether the state has met its burden of persuasion. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 390, 678 N.E.2d 541, 548-549 (Cook, J., concurring). In making this determination, we do not view the evidence in the light most favorable to the prosecution. Instead, we must "review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the Trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins,* supra, 78 Ohio St.3d at 387, 678 N.E.2d 541. (Quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720-721). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." *State v. Thompkins,* supra. In *State v. Thompkins,* supra the Ohio Supreme Court further held "[t]o reverse a judgment of a trial court on the basis that the judgment is not sustained by sufficient evidence, only a concurring majority of a panel of a court of appeals reviewing the judgment is necessary." 78 Ohio St.3d 380, 678 N.E.2d 541 at paragraph three of the syllabus.

{¶52} Employing the above standard, we believe that the state presented sufficient evidence from which a jury could conclude, beyond a reasonable doubt, that appellant committed the offenses of possession of crack cocaine in an amount greater than or equal to 10 grams but less than 25 grams,  a second-degree felony, and possession of cocaine, a fifth-degree felony.

{¶53} Appellant herein was convicted of one count of possession of cocaine in violation of R.C. §2925.11(A) and (C)(4)(a) and one count of possession of cocaine in violation of R.C. §2925.11(A) and (C)(4)(d) as set forth below:

{¶54} "(A) No person shall knowingly obtain, possess, or use a controlled substance.

{¶55} " ***

{¶56} "(C) Whoever violates division (A) of this section is guilty of one of the following:

{¶57} " ***

{¶58} "(4) If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of possession of cocaine. The penalty for the offense shall be determined as follows:

{¶59} "(a) Except as otherwise provided in division (C)(4)(b), (c), (d), (e), or (f) of this section, possession of cocaine is a felony of the fifth degree, and division (B) of section 2929.13 of the Revised Code applies in determining whether to impose a prison term on the offender.

{¶60} " ***

{¶61} "(d) If the amount of the drug involved equals or exceeds one hundred grams but is less than five hundred grams of cocaine that is not crack cocaine or equals or exceeds ten grams but is less than twenty-five grams of crack cocaine, possession of cocaine is a felony of the second degree, and the court shall impose as

a mandatory prison term one of the prison terms prescribed for a felony of the second degree."

{¶62} Appellant claims that the State failed to prove that the cocaine in this case was crack cocaine. Appellant argues that the testimony of the State's expert witness that both baggies contained crack cocaine is contradictory to the testimony of Officers Cressley and Mears. Officer Cressley testified that he seized one baggie containing crack cocaine and one baggie containing powder cocaine and Officer Mears testified that he identified the one bag of drugs as "baggie with powder cocaine" on the evidence property tag.

{¶63} Upon review, we find that forensic scientist Jeffrey Houser provided expert testimony that the drugs recovered in this case both contained "Cocaine base (Crack Cocaine)". (T. at 229). Further, he testified that the substance in one baggie weighed 0.2 grams and the other weighed 10.7 grams. (T. at 229-230). He explained that "crack cocaine is the base form of cocaine, which is typically smoked." (T. at 222).

{¶64} The weight to be given to the evidence and the credibility of the witnesses are issues for the Trier of fact. *State v. Jamison* (1990), 49 Ohio St.3d 182, 552 N.E.2d 180, certiorari denied (1990), 498 U.S. 881, 111 S.Ct. 228, 112 L.Ed.2d 183. Determining the weight and credibility of witness testimony has long been held to be the 'part of every case [that] belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men.' *Aetna Life Ins. Co. v. Ward,* 140 U.S. 76, 88, 11 S.Ct. 720, 724-725, 35 L.Ed. 371 (1891)". *United States v. Scheffer* (1997), 523 U.S. 303, 313, 118 S.Ct. 1261, 1266-1267, 140 L.Ed.2d 413.

{¶65} We find, based upon the testimony presented, that sufficient, credible evidence supports the two separate charges of possession of cocaine.

{¶66} Appellant further argues that the State failed to establish an unbroken chain of custody of the seized drugs in this case. Specifically, Appellant challenges the location of the drugs between February 20, 2009 and May 22, 2009. Appellant claims that this issue raises concerns that substitution, alteration or tampering may have occurred.

{¶67} In this case, there was a proper chain of custody establishing that the officers seized the drugs, that officers conveyed such drugs to the property evidence manager, that she personally transported the drugs to the BCI lab in London on February 20, 2009, and that she retrieved the drugs from the London lab and returned them to the property room on May 22, 2009. Additionally, Jeffery Houser testified that he took possession of the evidence at the BCI lab in Richfield on April 15, 2009 and performed his tests on the evidence on April 15, 2009. Mr. Houser testified that when he received the evidence it was in a sealed Kpak evidence envelope provided by the London lab, marked with a unique number assigned by that lab. (T. at 223-228).

{¶68} A chain of custody can be established by direct testimony or by inference. *State v. Conley* (1971), 32 Ohio App.2d 54, 60, 288 N.E.2d 296, 300. The issue of whether there exists a break in the chain of custody is a determination left up to the Trier of fact. *Columbus v. Marks* (1963), 118 Ohio App. 359, 194 N.E.2d 791. Any breaks in the chain of custody go to the weight afforded to the evidence, not to its admissibility. *State v. Blevins* (1987), 36 Ohio App.3d 147, 521 N.E.2d 1105. Even if

the chain of custody is broken, that fact alone will not render the evidence inadmissible. *State v. Walton,* Cuyahoga App. No. 88358, 2009-Ohio-1234 at ¶ 6.

**{¶69}** The State, is not required "to negate all possibilities of substitution or tampering. The State need only establish that it is reasonably certain that substitutions, alteration or tampering did not occur." *State v. Moore* (1973), 47 Ohio App.2d 181, 183, 353 N.E.2d 866. See, also, *State v. Thompson* (1993), 87 Ohio App.3d 570, 582, 622 N.E.2d 735; *State v. Brown* (1995), 107 Ohio App.3d 194, 200, 668 N.E.2d 514.

**{¶70}** The possibility of contamination goes to the weight of the evidence, not its admissibility. 'A strict chain of custody is not always required in order for physical evidence to be admissible.' *State v. Wilkins* (1980), 64 Ohio St.2d 382, 389, 18 O.O.3d 528, 532, 415 N.E.2d 303, 308; see *State v. Downs* (1977), 51 Ohio St.2d 47, 63, 5 O.O.3d 30, 38, 364 N.E.2d 1140, 1150." *State v. Ritchey* (1992), 64 Ohio St.3d 353, 360, 595 N.E.2d 915, 923 overruled on other grounds, *State v. McGuire* (1997), 80 Ohio St.3d 390, 402-404, 686 N.E.2d 1112.

**{¶71}** Based on the foregoing, we find that the State sufficiently established that substitution, alteration or tampering did not occur. Nevertheless, as stated above, even if the chain of custody was suspect, the baggie would still have been admissible.

**{¶72}** Although no specific argument was made under this assignment as to the charge of illegal manufacture of crack cocaine in the vicinity of a juvenile, based on our ruling as to the search and seizure of the items in the duffel bag, we cannot say that without this evidence the jury's verdict would have been the same.

**{¶73}** Appellant's second assignment of error is overruled as to the two counts of possession of cocaine.  Appellant's conviction for illegal manufacture of crack cocaine is hereby vacated and remanded.

**{¶74}** For the forgoing reasons, the judgment of the Court of Common Pleas of Fairfield County, Ohio, is affirmed in part, vacated in part and remanded for further proceedings consistent with this opinion.

By: Wise, J.

Gwin, P. J., and

Hoffman, J., concur.

_____

_____

_____

                                         JUDGES

JWW/d 0715

IN THE COURT OF APPEALS FOR FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| ALONZO JUSTICE | : | |
| | : | |
| Defendant-Appellant | : | Case No. 10 CA 41 |


For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Fairfield County, Ohio, is affirmed in part, vacated in part and remanded for further proceedings consistent with this opinion.

Costs to be split equally between the parties.


_____

_____

_____

JUDGES